No. 9650.

## Sterling P. Carroll et al. vs. M. A. Cockerham et al.

A judgment of separation between husband and wife as to third persons, only proves *rem ipsam.*   No legal presumption of its correctness arises from the mere signing the decree.

Where such judgment is charged fraudulent and simulated and proof has been administered going to sustain such charge, it is incumbent on those interested in maintaining such judgment, that its reality and the validity of its consideration should be established by evidence *aliunde.*

Where a husband makes a transfer to his wife without any valid consideration and such transfer exceeds the disposable portion of his estate, his forced heirs after his death

may, by suit, demand that the transfer be annulled in excess of the disposable portion even though the property has passed into the hands of third persons, and can be brought back into the succession of the transferror or donor free from all charges created by the transferree or donee. C. C. 1516.

Contracts between husband and wife are restricted to the exceptions in C. C. 2446, and all those outside of the limits therein prescribed are null and void.

A probate sale, made in pursuance of an agreement between the executor of the estate to which the property belongs and his partner in business, by which such partner is to buy the property in his own name but for the benefit of his firm, is void.

A plea of estoppel cannot be maintained where it appears that the party against whom the plea is directed was ignorant of the true facts relating to the matter which formed the subject of the plea. Watkins vs. Cawthorn, 33 Ann. 1194.

A party is not estopped from prosecuting a claim because the same claim was urged in a previous suit on which he took, seasonably, a voluntary non-suit.

APPEAL from the Tenth District Court, Parish of Red River. *Hall*, J.

---

*L. B. Watkins* and *S. A. Hull* for Plaintiffs and Appellants :

I.

A partial history of this case may be found in the following opinions of this Court, viz: 32 Ann. 141; 34 Ann. 423; 35 Ann. 281.

II.

Of the exception of no cause of action. This is an action of reduction of an excessive and inofficious donation brought by two forced heirs against a third person, for the recovery of two-fifths of two-thirds of certain real estate that was donated by their father to their mother, "contrary to natural duty," and in disparagement of their legitime, and which immovable was alienated by said donee or her executors. R. C. C. 1502, 1504, 3545; 11 R. 302; 30 Ann. 726; R. C. C. 1516, 1517; 32 Ann. 637.

The doctrine announced in 35 Ann. 35, 281, to the effect that in such a suit plaintiffs must be regarded as creditors, must be controlled by R. C. C. 1504.

III.

Act No. 5, approved June 17, 1884, is a remedial statute, and amends R. C. C. 2239, and repeals by implication R. C. C. 2236, *vide* 24 Ann. 25; 26 Ann 584; 15 Ann. 110; 29 Ann. 608; 17 La. 476; 7 O. S. 8; 12 Ann. 554.

IV.

A judgment of separation between husband and wife only proves *rem ipsam.* 9 Ann. 100; 8 Ann. 27; 20 Ann. 204; 5 Ann. 401; 4 Ann. 435; 19 Ann. 94, Bogan vs. Finley.

V.

30 Ann. 966, Brown, Administrator, vs. Brown, cited by the judge *a quo* in his opinion, is not in point. In that case the parties to the *dation* assailed were father and daughter; while in this they are husband and wife. In the former, both parties were *sui juris;* but in the latter they are not.

In 15 Ann. 64, Carter vs. McManns, the *dations* complained of were executed by a father to his son, and suit was brought to revoke them under R. C. C. 2444

VI.

Transactions between husband and wife are restricted to the exceptions provided in R. C. C., 2446. All those outside of the limits therein prescribed are absolutely null and void 4 Ann. 65; 1 Ann. 305; 2 Ann. 483; 7 Ann. 92; 11 Ann. 265; 21 Ann. 466; 4 La. 421.

VII.

The husband is restricted in making conveyances to his wife to such as shall have a legitimate cause. R. C. C. 2446.

The true value of the property conveyed must not exceed the amount of the debt of the

Carroll et al. vs. Cockerham et al,

husband to his wife. It is not sufficient that a part of the price was real. Interest antecedent to judgment cannot be allowed. 19 La. 581; 3 Ann. 611; R. C. C. 2386, 2402. There must be an adequate consideration. 30 Ann. 750, Lehman, Abraham & Co., vs. Levy, 5 Ann. 494; 23 Ann. 439; 29 Ann. 585; 4 R. 117.

### VIII.

The wife, nor one holding title under her, can be allowed to show a wholly different consideration for a *dation* from the one that is expressed in the instrument. 34 Ann. 689. Chaffe, Syndic, vs. Scheen; R. C. C. 1900.

### IX.

No legal presumption of the correctness of a judgment of separation arises from the mere signing of the decree. 12 La. 303; 7 N. S. 460; 6 Ann. 730; 12 Ann. 193; 15 Ann. 33; 11 La. 33; 10 Ann. 691; 6 Ann. 647; 12 R. 98; 4 La. 419; 10 Ann. 85; 11 La. 534.

### X.

If the vendor continues in possession after the sale, and to act and hold himself out to the world as owner, there is reason to presume the sale is simulated, and the burden of proof is on the purchaser to establish the reality of the sale, and the payment of the price. R. C. C. 2480; 8 Ann. 506; 11 Ann. 163; 12 Ann. 666; 15 Ann. 555; 15 Ann. 616; 16 Ann. 284; 23 Ann. 258; 13 Ann. 340.

### XI.

A probate sale made in pursuance of a written agreement entered into between an executor and his partner in business is an absolute nullity, and no title passes to the purchasor. notwithstanding he is the holder of a first mortgage against the property sold. 37 Ann. 275, Stanbrough vs. McClellan; 33 Ann. 748, Heirs of Wood vs. Nicholas; R. C. C. 1146; 16 Ann. 135; 31 Ann. 219, Linn vs. Dee.

### XII.

The registry of a judgment only operates as a judicial mortgage against all the immovables which the debtor actually owns or may subsequently acquire. R. C. C. 3228, 3320.

" The eviction by the mortgagor by a better title than that of the vendee which he holds, relieved the property from all liens acquired or granted under the impression that the title was good." 8 R. 485, Beaulica vs. Furst.

### XIII.

The possession of a purchaser under a title translative of property, is essential to the validity of a mortgage acquired against property held under a simulated conveyance; the continued possession of the vendor of such a title would put the mortgagor on notice, and deprive him of all equity and place on him the burden of proof. 29 Ann. 607, Hunter vs. Buckner; 11 Ann. 407, Foster vs. Foster.

The special mortgage occupies the same situation as a title.

### XIX.

Under the textual provisions of the Civil Code, "immovable property that is brought into the succession through the effect of reduction, is brought into it without any charge of debt or mortgages created by the donee." R. C. C. 1516.

The action of reduction is assimulated to that of collation in matters of partition; where the property alienated by an inofficious donation, is brought back it is "united to the mass of the successions free from all charges created by the donee." R. C. C. 1264; 32 Ann. 637.

But in this case the mortgage creditor of the donee would still retain his mortgage on other property of the donee. R. C. C, 1265.

### XX.

The failure of J. H. Scheen and M. A. Cockerham to appear and testify to the reality of the sales attacked as simulated, and without consideration is convincing evidence of the truth of plaintiffs' charges of fraud and simulation. 33 Ann. 1057, Atkins vs. King, Administrator.

### XXI.

No estoppel is raised on the law. 30 Ann. 1309, Chaffe & Bro. vs. Morgan; 22 Ann. 368, Abbott vs. Welbur; Bigelow on Estoppel, p. 293.

It is a well settled principle that coverture disqualifies a woman from contracting, and her deed does not operate as an estoppel. An infant or minor, not being *sui juris* will not be estopped by his deed during infancy nor afterwards, unless he ratifies it. Bigelow on Estoppel, p. 276; 34 Ann. 288; Gillespie vs. Twitchell, 4 Ann. 231; 6 Ann. 397; 16 Ann. 213; 7 Ann. 293; 13 Ann. 4; 12 Ann. 852; 14 Ann. 169; 23 Ann. 647.

Estoppel as to married women applies alike as to minors.

### XXII.

The tutor for plaintiffs, when they were minors, had a perfect right to take a voluntary non-suit in Boone & Cockerham vs. Carroll, 35 Ann. 281. That constituted no abandonment of their claims. It preserved them from the fate of the intervenors in that suit. That suit did not form *res judicata* even as to intervenors. They did not have a hearing on the merits.

The plaintiffs' plea of no cause of action was sustained.

The right of plaintiff was clearly and undeniably left open, and at large to be prosecuted herein. 33 Ann. 1194, Watkins vs. Cawthorn.

### *Egan and Pierson* for Defendants and Appellees:

1. A suit by them to be recognized as owners by inheritance of property conveyed by the ancestor is not a suit to enforce or protect the legitime of such heirs.

2. Forced heirs have only the right to reduce donations made in violation or to the prejudice of their legitime. C. C. 1502.

3. Forced heirs may bring the revocatory action against the acts of their ancestors only to the extent of their legitime and for the purpose of protecting same. Kerwin vs. Insurance Co., 35 Ann. 35; Ib. 284.

4. To the extent of their legitime children are not considered as heirs but as creditors, and as such may resort to the revocatory action to enforce and protect their legitime. Maples vs. Mittie and Sarah, 12 Ann. 759; 4 Ann. 502.

5. To sue to enforce or protect the legitime the heir must allege the aggregate of all the property of the donor at the time of his death, and the value of the property disposed of by donation and the amount due by the deceased donor at the time of his death, to form a basis upon which the court can estimate the legitime of the forced heir. C. C. 1505.

6. No amendment can be allowed to the pleadings after an exception of no cause of action has been sustained by the court. 35 Ann. 281; 34 Ann. 323; 37 Ann. 417.

7. The prayer by the forced heir to be recognized as owner by inheritance of an undivided interest in property disposed of by the ancestor cannot be sustained to enforce or protect the legitime of such heir. The court cannot determine what interest in the property claimed will equal the amount of reduction such heir is entitled to enforce or protect his legitime.

8. In a suit to revoke the act of the ancestor by the forced heir to protect or enforce the legitime, the succession should be made a party where the amount of the legitime has not been previously liquidated by a judgment in favor of the heir. C. C. 1972.

9. Third persons acquiring a mortgage or a title to property upon the faith of the public recorded titles of the persons from whom they acquire cannot be affected or impaired in their acquired rights upon or to such property by any latent or secret equity existing between their authors and other persons. Nor can such acquired rights be evicted for any matter not apparent upon the fact of the records. Schepp vs. Smith, 35 Ann. 6; Hunter vs. Buckner & Bro., 29 Ann. 697.

Carroll et al. vs. Cockerham et al,

The opinion of the Court was delivered by

TODD, J. The plaintiffs, as forced heirs of Madison Carroll, sue to annul a *dation en paiement* of a plantation described in their petition, made by the said Madison Carroll to his wife, Mrs. E. A. Carroll, in 1866, and also subsequent conveyances of the same, judicial and conventional, by or through which it passed to the defendant and present claimant. Madison Carroll died shortly after the dation was executed and plaintiffs base their action on the ground that this disposition of the property was without consideration and infringed on their *legitime* as forced heirs of their father, the said Madison Carroll, who died intestate.

The facts are briefly these:

Plaintiff, a brother and two sisters are the issue of the marriage of Madison Carroll and Mrs. E. A. Carroll.

On the —— of March, 1866, Mrs. Carroll obtained a moneyed judgment against her husband, M. Carroll, for $2500 with legal interest from 1856.

Mr. Carroll died in January, 1867, and Mrs. Carroll in 1876.

On the death of the former, the Home plantation, the subject of this controversy, was not placed on the inventory of his succession. It was inventoried after the death of Mrs. Carroll as the property of her succession.

Mrs. Carroll left a last will, of which Julius Lisso and her son Madison Carroll, Jr. were the executors.

On the 17th of October, 1877, the Home plantation was sold at probate sale at the instance of Lisso, executor, and adjudicated to J. H. Scheen.

On the 4th of March, 1878, Scheen sold the property to Madison Carroll, Jr.

On the 17th of February, 1883, the property was sold under a judgment against J. H. Scheen in favor of one John Cockerham, to enforce a judicial mortgage on the land, resulting from the recordation of said judgment of date December 1, 1877, and was adjudicated to the defendant, M. A. Cockerham, who claimed to be the owner of the judgment and the judicial mortgage by transfer from the executors of John Cockerham's estate.

1. There was exception filed to the suit of no cause of action, which was disposed of by the court *a qua* in these words, quoting: "Peremptory exception tried and sustained, unless the plaintiffs amend their petition in three days, setting forth the amount of debts of Madison Carroll at his death, and the amount of their *legitime*."

52

No objection was made at the time by defendants' counsel to the terms of the ruling and the condition expressed therein; but in·this Court it is charged that it was unwarranted to the extent that it allowed plaintiffs the privilege of perfecting their petition by an amendment. In the absence of any objection to the order, seasonably made, and the failure to retain any bill to the ruling, we are inclined to the opinion that his complaint now urged here for the first time, cannot avail him. Be that as it may, however, we think the ruling was a proper one. The exception in effect charged that the allegations of the petition were insufficient to justify the relief sought, inasmuch as they did not afford the information by which the amount of the legitime could be determined. We think, under the circumstances, the ruling was a proper one and the defendant was not prejudiced thereby.

It was not an absolute dismissal of the suit, but a dictation or suggestion of the court that it would be dismissed unless an amendment supplying the alleged omissions was filed in the delay granted therefor.

The defendant cites in support of his contention several decisions of this Court. They are not in point, they only go to the extent, that after there has been an unqualified dismissal of the suit on an exception of no cause of action, plaintiff cannot be permitted to amend. Besides and behind all this, the fixing or measuring the amount of the legitime of a forced heir, is a matter of evidence, and since the legitime was distinctly claimed in the original and amended petition and the property fully described— the transfer of which was sought to be annulled to make up their legitime—and its value given, and it was averred that all other property left by the decedent had been disposed of and applied to other purposes: Such allegations sufficed to authorize the admission of all the proof required and subsequently offered to adjust and determine the amount of the legitime. In other words, the judge *a quo* was in error in sustaining, even conditionally, the exception urged.

This last consideration will also meet another exception of the defendant, the one made to the amendment fixed by the plaintiffs under the requirements of the order of the court referred to, to the effect that it was not fixed in time, and should have been rejected, that is, that it was not presented within the three days allowed. This further exception comes within the well-established rule, that in this instance the time presented was not of the essence of the order on the subject treated of therein, and therefore the order could be complied with

even after the term elapsed, in the absence of any pleading or plea interposed by the opposing party before filing.

Besides W. A Cockerham, the party in possession of the land in controversy—Julius Lisso and Madison Carroll, executors of Mrs. E. A. Carroll's succession and the syndic of Lisso & Scheen, insolvents, who held the notes of Madison Carroll, Jr., purporting to be secured by mortgage on the land in question, were made defendants in the suit—Cockerham alone answered; the others making default.

Besides the general issue, Cockerham specially denied the nullity of the *dation* and judgment attached—averred that they were both founded on a just and valid consideration—further, that the property was sold at succession sale to pay the debts incurred by Mrs. E. A. Carroll subsequently to the death of her husband—that the said sales and the subsequent ones were valid and legal.

He further pleaded an estoppel against the plaintiffs, based upon the following alleged facts : He averred that, after the probate sale of this property and its adjudication to Scheen, an account of the succession of Mrs. E. A. Carroll was filed by Lisso, executor, upon which was placed for distribution the amount of said adjudication. That this account was opposed by the plaintiffs, then minors, through their tutor, in which a ranking privilege was claimed on the proceeds of said sales. Further, that in the suit to enforce a mortgage against Madison Carroll, Jr., the alleged purchaser of this property from Scheen, these plaintiffs, through their tutor, had intervened in that suit, in which intervention they set up the same claim to this land as in the present action, and urged that by these proceedings plaintiffs are now estopped from again prosecuting their demand.

He further averred, that he and his vendors were not parties to the suit in which the judgment of Mrs. Carroll against her husband was rendered, nor to the act conveying the property in controversy to the former, in satisfaction of said judgment, and that the said acts and proceedings being regular in form, he nor his vendors were bound to look beyond the decree of the court.

The plaintiffs are appellants from the judgment dismissing their action.

Two matters of inquiry demand our attention, since upon their solution mainly hinge all the other subjects of controversy embraced in the case. The first is whether the *dation en paiement* assailed in point of fact, is subject to annullment or reduction as having infringed upon the *legitime* of the plaintiffs as forced heirs of their father ; and next, if it did, was it made without a legal consideration.

To determine the amount of the legitime, the property alienated must be fictitiously brought back into Madison Carroll's succession—collated, as it were, with the active mass, as forming part of same at the time of his death. The debts are deducted and the disposable quantum is calculated on the balance, taking into consideration the number of heirs. C. C. 1504. Thus:

Amount of inventory, 1867 ..............................$ 6,721 68
Home plantation (returning) value.....................  6,000 00

    Total .........................................$12,721 68

Cᴿ.

By succession debts....................................  3,000 00

    Net value .......................................$ 9,721 68

The disposable portion (one-third) is....................$3,240 56

Amount disposed of in transfer of Home plantation, valued at .$6,000 00
From this deduct the disposable portion...................  3,240 56

    Amount of excess over disposable......................$2,759 44
Share of each heir therein, one-fifth......................  551 28
Share of the two plaintiffs................................  1,102 56

There is some dispute as to value of the Home place at the time of its transfer in 1866, and the testimony on this point is conflicting. The value given in the above statement is fairly deducible from the evidence, and is a medium between the highest and lowest estimates of its value found in the record.

From this statement it is to be seen that the disposition made of this property by the *dation en paiement* did encroach upon the legitime of the plaintiffs at least to the amount above set forth.

The next question for determination is whether or not the act or transfer was founded on a real and valid consideration. It purports, as before stated, to have been passed in satisfaction of a moneyed judgment obtained by Mrs. Carroll against her husband. The act recites this judgment as being for the sum of $2500, with legal interest from 1856, this judgment being rendered on January 25, 1866, and the interest allowed thereby accruing during ten years before the filing of the suit, and amounting to $1240. Of course interest could only run legally from the institution of the suit, since a husband could not be liable for interest on a debt owing the wife during the existence of the community. The dation purports to have been made for the sum of $3740, which was the aggregate of the principal and interest of the judgment, computed as above, and the property was appraised at this sum.

Therefore, from the face of the act it appears that, at least to the extent of $1240, there was no consideration for the dation. The judgment which this dation purports to satisfy must be viewed as a part of the act, or of the title passed thereby, and is next to be examined.

The proceedings [of the suit are before us. They do not contain the evidence adduced in support of the judgment rendered. The evidence was not reduced to writing. We note that the petition and answer, the waiving of citation by the defendant, and the judgment, are all in the handwriting of the plaintiffs' attorneys therein. It is apparent on the face of the proceedings that the judgment was a consent judgment. It was attacked in the instant suit as being without consideration and void, and testimony was offered by the plaintiffs to strongly support these allegations, yet no evidence was offered by the defendants in rebuttal or with a view to show that the judgment was founded on a real or genuine consideration.

As to third parties or creditors, the production of this record only proved *rem ipsum.* Landry vs. Fullen, 8 Ann. 100; Remey vs. Municipality, 8 Ann. 27; Erwin vs. Bank, 5 Ann. 3.

To sustain the judgment in view of the attack upon it, it was incumbent upon those interested to maintain it, to administer proof of its correctness and the reality of the consideration on which it was founded. Bogam vs. Finley, 19 Ann. 94; also 5 Ann. 135; 6 Ann. 46; 10 Ann. 87; 28 Ann. 546.

The judge *a quo* maintained the judgment, his reasons therefor being substantially: out of consideration for the character of the judge who signed the judgment and the presumption in favor of his judicial acts, and also on account of the good reputation of two witnesses then deceased, who were said to have testified in the case, and whose names as witnesses were indorsed on the petition, but whose testimony was not taken down as stated. The judge was in error, the consideration of the judgment should have been established *aliunde*, by proper proof, and, in the absence of such proof, we are forced to conclude that the judgment was without consideration and void.

This conclusion might seem sufficient to determine the case, in view of the declarations of the Code, as follows :

" Immovable property that is brought into the succession through the effect of *reduction*, is brought into it *without any charge of debts or mortgages created* by the donee. R. C. C. 1516."

" The *action of reduction*, or revindication, may be brought by the *heirs* against *third persons* holding the immovable property which has been alienated by the donee, in the same manner and order that it

may be brought *against the donee himself*, but after discussion of the property of the donee." R. C. C. 1517.

The suit of Hadder vs. Shepherd, 1 L. 506, is stated in the language of the court, to be a suit against a *third possessor by a forced heir for two undivided thirds of a plantation and slaves being the legitime, or portion of which the deceased could not dispose.*"

The plaintiff's right of action in that case was distinctly recognized, though the court held that it was premature because the property of the donee had not been discussed, a question that does not arise in this case.

The claim of the defendant, to the property in question is founded on alienations made thereof and mortgages given thereon subsequently to the death of Madison Carroll, Sr., and its purported acquisition successively by Mrs. E. A. Carroll and her transferees; and such claims might seem to be fully met by the words of the case above quoted ; but, as these parties assert rights thereto protected, as they claimed, by their ignorance of any equities in favor of plaintiffs to the land, it is proper that we should investigate their pretensions.

Scheen, as stated, purports to have bought this property at probate sale, as belonging to the succession of Mrs. E. A. Carroll.

It is in proof that he paid nothing for the land. He and his partner, Julius Lisso, then composing the firm of Lisso & Scheen, held several judgments against Mrs. Carroll, and Lisso was the executor of her estate, and it was believed by them that Scheen could buy in the property and the amount bid therefor could be applied to the payment of the judgment and mortgages held by that firm against Mrs. Carroll's succession; therefore the amount of the adjudication was not paid in by Scheen.

Besides, it is shown that there was an agreement before the sale, in writing, by which the property was to be bought in for the benefit of Lisso & Scheen, and that as Lisso, being the executor, could not purchase for himself or his firm, it was to be struck off to Scheen.

This agreement was plainly in contravention of a prohibitory law, touching the purchase by executors, and others in a like capacity, of succession property under their administration, and it is obvious that this sale, though thus disguised or planned to evade the law, was in direct contravention of it, and therefore void for this reason.

This case comes clearly within the spirit of the decisions of the Heirs of Wood vs. Nicholls, 33 Ann. 748; Chaffe vs. Farmer, 34 Ann. 1017 ; Stanborough vs. McClellan, 37 Ann. 275, rendered by the present court. Moreover, it appears that Scheen never went into possession

of the property, but that it was occupied by Madison Carroll from the time of his mother's death till a short time before the institution of this suit, when the defendant Cockerham took possession of it under his purchase.

Shortly after the adjudication of this property to Scheen, he confessed a judgment in favor of one Cockerham, which was recorded, that it might operate as a judicial mortgage on this and other immovables of Scheen. After the death of Cockerham the executors of his estate transferred this judgment to his son, M. A. Cockerham, defendant herein, and he enforced the judicial mortgage resulting from its recordation against Madison Carroll, Jr., then in possession of the land, under a purchase from Scheen; and at the sheriff's sale Cockerham bought it in in his own name.

This Cockerham was the son-in-law of Scheen, and it was shown on the trial that the alleged acquisition of this judgment by Cockerham and the purchase under it at sheriff's sale was at the instance and for the benefit of Scheen, and that Cockerham was merely a person interposed, and has since the institution of this suit conveyed the property to L. E. Scheen, the son of J. H. Scheen.

What is confirmatory of this fact as well as the facts relating to the pretended purchase by Scheen and of other matters pertaining to all transactions of these parties recited above, is the circumstance that, though Scheen and Cockerham, the executors of Mrs. Carroll's estate, Julius Lisso and Madison Carroll, Jr., and the syndic of Lisso & Scheen were all made parties to the suit, none of them appeared and answered save Cockerham; and what is still more significant, is that though the testimony, especially of Scheen and Cockerham might have thrown a blaze of light on these alleged damaging facts and irregularities charged in the petition, and with respect to which they were distinctly challenged as to the proof—the trial of the case was conspicuous for their silence on these matters, and their failure to go on the witness stand! They come clearly within the rule laid down in Atkins vs. King, 33 Ann. 1007; School Board vs. Trimble, Ib., 1072.

As before mentioned, it is charged, however, that plaintiffs are estopped from asserting their claim and making these contentions in support of it, because of the opposition of their tutor to the account filed by Lisso, executor of Mrs. Carroll, wherein claim was set up to a privilege on the amount of the price purporting to have been paid by Scheen for the property at the probate sale, and because of their intervention and its withdrawal in the suit to enforce the judicial mortgage by Cockerham under the judgment against Scheen.

It is questionable whether a minor, any more than a woman or others laboring under a like incapacity, can be subject to this rule of estoppel resulting from pleadings, admissions, or the like; but be that as it may, a knowledge of the real facts or of the true nature of the conditions pertaining to or involved in the question of estoppel on the part of one against whom the plea is directed, is essential to its maintenance. Watkins vs. Cawthorn, 33 Ann. 1194.

In this instance we have the testimony of the tutor who filed the opposition, that when it was made he was not informed with respect to plaintiffs' claim to the property, that he did not know that Scheen had paid no part of the price bid at probate sale for the Home plantation, but believed that there was an actual fund derived from this sale to be distributed, and did not know that this feature of the account was a mere fiction. If these minors could be estopped by any pleadings or averments that their tutor might be pleased to make in their behalf, certainly under the conditions named they could not be thus affected.

In the intervention mentioned, again through their tutor, they asserted their claim to the property in question as in this suit, accompanied by corresponding allegations to same extent. Their intervention was excepted to, and the tutor took a voluntary non-suit. Even had the plaintiffs been of age at the time and thus withdrew their suit before trial, they would not be precluded from again asserting by a subsequent suit the same claim.

There is, therefore, no estoppel on this last ground.

We have thus reviewed all the issues presented by the pleadings, and are satisfied that plaintiffs have made out their case. The only question still to be considered relates to the decree to which they are entitled.

Art. 2446 of the Civil Code prohibits all contracts between husband and wife save in the three following cases:

1. When one of the spouses makes a transfer of property to the other who is judicially separated from him or her in payment of his or her rights.

2. When the transfer made by the husband to the wife, though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated.

3. When the wife makes a transfer of property to the husband in payment of a sum promised to him as a dowry.

Outside of these exceptions, such contracts are void. Such is our conclusion respecting this contract in question—this act of *dation en paiement* entered into between Madison Carroll and his wife on the 7th

September, 1866. It must, therefore, be annulled, at least to the extent that plaintiffs were prejudiced thereby, which is to the amount that it encroached upon their *legitime* in the succession of their father, and which amount appears from the statement heretofore submitted in this opinion. Had this disposition of the property mentioned been by a gratuitous donation, plaintiffs could not complain of it except in so far as it exceeded the disposable portion, so in this instance the nullity declared must be limited and measured by their interests, and they cannot legally demand that the act be annulled in toto.

The authorities cited by the plaintiffs' counsel as favoring such extreme demand were cases where the wife, as part of the consideration of the *dation*, assumed the payment of her husband's debts, which she was legally forbidden to do, though we express no opinion as to the correctness of these decisions.

Besides the claim of the plaintiffs asserted to as upon the "Home plantation," they claim also two-fifths interest in three other pieces or tracts of lands, known and designated respectively as the Coushatta bayou lands, the Coushatta town lots and the Child's seventy acre tract.

The Coushatta bayou land was sold by Madison Carroll, Sr., to one A. H. Stalhart for $4600, on which, before his death, he had obtained a judgment which appears in the inventory of his succession. This judgment was executed by Mrs. Carroll in 1869 by the seizure and sale of the plantation, on which a mortgage had been retained. At this sale she purchased said property for herself and in her own name, and the amounts of the several adjudications were credited as stated, she became the debtor of the succession for the same, and the heirs have no interest in the property, but their recourse is against their mother and tutrix, for the price.

The remaining tract—the Child's seventy acre lots—was included in the *dation* made by Carroll to his wife, and as part of the Home plantation. It was never embraced in any of the subsequent sales, and the plaintiffs' rights thereto cannot be extended beyond their claim heretofore recognized in the Home plantation on account of their *legitime*.

It is therefore ordered, adjudged and decreed that the judgment of the lower court so far as it rejects plaintiffs' claim to the lands described in the petition as the Coushatta bayou plantation, the Coushatta town lands and the Child's seventy acre tract be, and the same is hereby affirmed, and that in all other respects the judgment be annulled, avoided and reversed, and that the *dation en paiement* entered into between Madison Carroll and Mrs. E. A. Carroll on the 6th of

September, 1866, be and the same is hereby annulled to the extent the same infringes on the *legitime* of the plaintiffs as forced heirs of Madison Carroll, deceased, which is hereby recognized, and the amount of the plaintiffs interest in the said excess over the disposable portion being the sum of $1102.56, and which sum, with legal interest from judicial demand is hereby recognized as a legal charge against the lands conveyed in said *dation* of the 6th September, 1866.

And it is further ordered, adjudged and decreed that the following acts and proceedings relating and purporting to affect the lands embraced in said *dation* of the 6th of September, 1866, and described in the petition be and the same are hereby declared null and void, viz :

1. The sale to J. H. Scheen (probate sale), of date the 17th of October, 1877.

2. The judicial mortgage of date the 1st of December, 1877, resulting from the recording of the judgment against J. H. Scheen in favor of John Cockerham, so far as it purports to operate on said land.

3. The sale by Scheen of said lands to Madison Carroll, Jr., and the special mortgage given thereon by the latter of date March the 4th, 1878.

4. The sheriff's sale to the defendant of 17th of February, 1873.

It is further ordered and decreed that defendants pay costs of both courts.