Statement of the Case.
NICHOLLS, C. J.
The plaintiffs in' this suit are Mrs. Kate H. Wells and Miss Elise Wells. In their petition they averred that their grandfather James W. Howard died in the parish of Caddo about February, 1875, *350 and his wife, Mrs. M. A. Howard, died about the year 1877, leaving as their only children and heirs petitioners’ mother, Mrs. Lou H. Tally,, and her sister, Mrs. M. A. Harden-burg, widow; that their grandfather left at his death considerable property in said parish, and in the part that was then in Red River parish, but was now in De Soto parish, and especially certain property which they described, then known as the “Howard Place,” and later as the “Hardenburg Place,” and now as the “Goss Plantation.”
That said lands were sold at two several succession sales — part at one made by Z. T. Webster, sheriff and ex officio auctioneer of Red River parish, on the 6th of March, 1878, and the rest at another made by W. W. Madison, auctioneer of Caddo parish, on the 31st day of December, 1878 — and the same were bought in the name of Mrs. M. A. Harden-burg, with the understanding and agreement previously made and entered into between Mrs. Hardenburg and Mrs. Tally, petitioners’ mother, that said purchases were for the mutual benefit and advantage and ownership of Mrs. Hardenburg and Mrs. Tally, and that the titles should be taken in the name of Mrs. Hardenburg for cpnvenience.
That afterwards, on the 5th day of December, 1882, in recognition of this agreement, these said parties (Mrs. Hardenburg and their said mother) signed a written act or counter letter in which the said Mrs. Tally’s ownership was recognized; said counter letter being duly recorded in Book 2 of Sales of De Soto parish January 30, 1888.
That about the year 1883 the said Mrs. Tally instituted suit No. 4,027 on the docket of this said court against the said Mrs. M. A. Hardenburg to have her rights of ownership in said lands recognized and enforced, which suit was continued from year to year and never tried, and the record appears to be lost.
That the said Mrs. Hardenburg died about the year 1SS7, leaving as her only child and heir C. H. Hardenburg.
That by two acts of sale, dated July 17, 1888, and December 22, 1888, the said C. H. Hardenburg pretended to sell said lands to William Goss, a resident of the parish of De Soto, in this state, for the price of $2,050 — a price far below its value.
That at the time of said sale to Goss the suit above mentioned for said property was-pending, and the said counter letter was duly recorded, and the said Goss had legal notice of the ownership of petitioners’ mother, and was in legal bad faith, and said sales to him, being the sales of property of another to him, at the time claimed by a suit in court, were illegal, null, and void, and without effect, and that the said Goss was liable for rents and revenues of said land from the date of this sale.
That their said mother died intestate in the year 1900, leaving as her only heirs petitioners, who were her forced heirs, and as such had the right to annul absolutely the said succession sales in so far as they placed their said mother’s half interest in said lands purchased at said sales in the name of the said Mrs. M. A. Hardenburg; the same being, to this extent, simulations.
In view of the premises, they prayed that Wm. Goss be cited, and that a curator ad hoc be appointed to represent G. H. Hardenburg, who was permanently absent from the state, and that, after due proceedings had, that there be judgment annulling said succession sales in so far as they placed the half interest in said lands purchased by their said mother at said sales in the name of Mrs. M. A. Hardenburg, and placing same in the names of petitioners; that the acts of sale from O. H. Hardenburg to Wm. Goss, above mentioned, be annulled as to the half interest in said lands belonging to petitioners’ mother, and that the said half interest be restored to petitioners; and that they be recognized and decreed the owners thereof, and placed in possession.
They prayed for judgment against Goss .for the sum of $7,000 for the rents and revenues of their half interest in said lands from December, 1888, to December, 1901.
They prayed for all orders necessary, and for costs and general relief.
The court ordered that J. H. Sutherlin be appointed to represent C. H. Hardenburg, the absent defendant.
The defendant Goss prayed for oyer of the alleged agreement between Mrs. Hardenburg and Mrs. Tally, and that in default of its production the suit be dismissed.
The plaintiffs, in answer to this prayer for oyer, averred that a short time before filing this suit (about January 15, 1902) the said *352 counter letter was in the possession and custody of the clerk and ex officio recorder of De Soto, and that these plaintiffs applied to said clerk, and obtained a certified copy of the same, which they annexed in answer to said prayer for oyer; that immediately after making said copy the said original was lost, destroyed, or disappeared from said clerk’s office, as they were informed by said clerk, who informed them that he was unable to find the same, and for this reason the same could not be annexed, and the said certified copy was annexed in place thereof.
The instrument so annexed was as follows:
“State, of Louisiana, Parish of De Soto. Articles of agreement between Mrs. M. A. Hardenburg, of De Soto parish, La., and Lou H. Tally, of Oaddo parish, La., witnesseth that the said M. A. Hardenburg agrees to give the said Lou H. Tally an undivided half interest of all the lands bought by the said Hardenburg at the succession sales of J. W. Howard and at private sale of Mrs. M. A. Howard — especially the lands in Red River parish, La., described in procSs verbal of Madison, auctioneer, Oct. 19th; ’76, half the furniture at the Howard homestead, Oaddo parish, La., six hundred and twenty-five dollars cash; and agrees to perfect title to the homestead in De Soto parish for the mutual benefit of the said Lou H. Tally and M. A. Hardenburg, provided that the said Lou H. Tally paid half the expenses incurred in acquiring title to the above homestead. All for and in consideration that the said Lou H. Tally and her husband relinquishes all claims against the succession of J. W. Howard and Martha A. Howard, and against M. A. Hardenburg individually and as dative testamentary executrix of the succession of J. W. Howard: provided the final account of M. A. Hardenburg as dative testamentary executrix of the succession of J. W. Howard is homologated.”
This instrument is certified to have been recorded in the Book of Sales of the recorder of the parish of De Soto on January 30, 1888.
The defendant must have filed a supplemental prayer for oyer, though it is not in the record. Plaintiffs filed the following answer thereto: “In this matter the defendant suggesting that the agreement filed in answer to the prayer for oyer was not the one called for, but that he had reference to the agreement made prior to the succession sales-mentioned in the petition, the plaintiffs now further answer by saying that the said agreement was not in writing, as far as they know, and was never reduced to writing, except as shown by the document annexed to' their first answer to the prayer for oyer,, and mentioned in their petition.”
They prayed that the prayer for oyer be discharged, and for general relief.
The prayer for oyer was discharged.
The defendant Goss then filed an exception that the petition disclosed no cause of action; also an exception of nonjoinder and misjoinder. They were all overruled. He then filed as an exception the plea of prescription of 1, 5, 10, and 20 years against plaintiffs’ demand. In this exception he averred that he had been in continuous and uninterrupted peaceable, public, and unequivocal corporeal possession of the lands claimed by plaintiffs for more than 13 years, as owner in good faith, under two just, legal, and authentic titles, valid in form, and translative of property, for a- full and valid consideration, from O. H. Hardenburg, the apparent real owner and sole heir of his mother, Mrs. M. A. Hardenburg; said deeds of sale dated, respectively, July 17 and December 22, 1888; both recorded the same day of their execution in the recorder’s office of De Soto parish, Louisiana.
That through the authors of his said title, namely, O. H. Hardenburg and M. A. Hardenburg, he had held legal ownership and possession of the laud aforesaid for over 23 years. He also further leveled said plea of 1, 5, 10, and 20 years’ prescription at that portion of plaintiff's’ petition (1) wherein they sought to annul the said sale from the said Z. T. Webster, sheriff, and the said W. W. Madison, auctioneer, on the ground that so far said suit was a personal action brought by plaintiffs to settle a succession, and to place the property of J. W. Howard as it was before the date of said sales by the said Webster and Madison, and to enforce the so-called pretended agreement claimed by petitioners to have been made between Mrs. M. A. Hardenburg and Mrs. Lou H. Tally before the date of said sales from Webster and Madison to said M. A. Hardenburg; (2) on the ground that their said suit sought to-annul public sales made in 1878 by Z. T. *354 Webster and W. W. Madison, persons duly-authorized to sell at public auction, and also sought to correct alleged pretended informalities and irregularities growing out of said sales; (3) on the ground that said suit sought to have annulled the sales from O. H. Hardenburg to William Goss, made in 1888, as simulated, whereas plaintiffs’ petition contained no allegation of fraud or simulation between said Hardenburg and Goss with reference to said sales.
In view of the premises, he prayed that his plea of prescription be sustained, and that plaintiffs’ demand be rejected and their suit dismissed at their costs. The court sustained the plea of prescription and dismissed plaintiffs’ suit, and they appealed.
Opinion.
The issues raised in this action are simple. They are perplexing only by reason of the form in which they were disposed of in the district court, and under which they have been presented here. The action, so far as it concerned 0. H. Hardenburg, who was the vendor of the property in litigation to the defendant Goss, went no further than his citation through a curator ad hoe. The curator made no appearance, and no judgment by default was taken against him. The defendant Goss filed no answer, but went to trial upon an exception of prescription. Plaintiffs’ counsel, in his brief, says that the suit is brought under articles 1502, 1504, 1516, 1517, and 2239 of the Civil Code, and he copies in his behalf article 2289, as amended by Act No. 5 of 1884, which reads as follows:
“Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parole evidence the simulated contracts of those from whom they inherit and shall not be restricted to the legitime.”
He says further:
“The right of the forced heir to annul the simulated contracts of the ancestor by parol evidence, to the extent of the legitime, existed and it was frequently recognized prior to the act of 1884, and the only change made by that act was to relieve the forced heir from the limit of the legitime, as to simulations, and permit him to annul for the whole. Spencer v. Lewis, 39 La. Ann. 316, 1 South. 671; Carroll v. Cockerham, 38 La. Ann. 814; Tessier v. Roussel, 41 La. Ann. 474, 6 South. 542, 824; Hoggatt v. Gibbs, 15 La. Ann. 700; Kerwin v. Hibernia Ins. Co., 35 La. Ann. 33.
“This ease presents simply a question of law, to wit, what prescription applies, and from what date did it begin to run? Clearly, the case is governed by the prescription of five years, which provides that actions for the reduction of excessive donations are prescribed by five years. And this prescription runs from the date of the death of the ancestor, under article 1504, which provides that ‘on the death of the donor or testator the reduction may be sued for by the forced heirs.’
“Mrs. Tally, the mother of the plaintiffs, died in 1899, and this suit was filed on the 4th of April, 1902, three years thereafter.
“The court gave no written opinion, *>ut, as we understand the oral opinion, it sustained the prescription of 10 years; holding that prescription ran against the mother during her lifetime, and that, as any action on her part would have been barred, her children had no greater rights, and stood in her shoes* The court failed to appreciate the distinction between children suing as simple heirs, in which case they are bound as the ancestor was bound, and the case where they sue as forced heirs, asserting rights under the law against the ancestor. The distinction is clear in the Code, and has been frequently recognized. Hoggatt v. Gibbs, 15 La. Ann. 700; Kerwin v. Hibernia Ins. Co., 35 La. Ann. 33; Boone v. Carroll, Id. 281; Carroll v. Cockerham, 38 La. Ann. 813; Tessier v. Roussel, 41 La. Ann. 474, 6 South. 542, 824; Cox v. Von Ahlefeldt, 50 La. Ann. 1266, 23 South. 959; 105 La. 543, 30 South. 175. The articles of the Code give the right to sue to reduce an excessive donation or a simulated act of the ancestor not to the ancestor, but to the forced heir. The ancestor could no more bring such a suit than he could to annul or reduce the bequests in her own will, and it might just as well be contended that, if his will was made more than five years before his death, his forced heir could not sue to annul it, or to reduce the bequests therein contained. How prescription could be held to have run against the ancestor, so as to bar *356 the forced heir from claiming his rights against such ancestor, is more than we can understand. It is a rule of universal jurisprudence that prescription does not run against the exercise of a right until that right is acquired. Even if the court should hold that the prescription of 10 years applies to this action, and that it ran against the plaintiffs before their right of action arose by the death of their mother, it could not benefit the defendant Goss, who, as alleged in the petition, was a purchaser in bad faith for the reason that at the time of his purchase the suit of Mrs. Lou H. Tally, the mother of the plaintiffs, for a half interest in the land, was pending in the district court of De Soto parish, in which he was a practicing lawyer.
His purchase of said property in litigation in said court was the purchase of a litigious right, and prohibited by article 2447, Civ. Code. Watterston v. Webb, 4 La. Ann. 173; Duson v. Dupre, 33 La. Ann. 1131; Buck v. Blair, 36 La. Ann. 20. It is immaterial whether defendant Goss knew of the suit or not as the Code strikes with nullity such a purchase, without limiting the nullity to cases where the purchaser knew that the property was in litigation. The law charges everybody with knowledge of what is being-done in the courts — especially the lawyers practicing therein. The law deems that all are apprised of pending suits, and any one who buys or takes a mortgage on property after the suit is begun acquires with notice, and consequently subject to such judgment as may be rendered in the suit. Civ. Code, art. 2453; Lacassagne v. Abraham, 48 La. Ann. 1165, 20 South. 672; Lacassagne v. Chapuis, 144 U. S. 119-126, 12 Sup. Ct. 659, 36 L. Ed. 368; Gillespie v. Cammack, 3 La. Ann. 248. Defendant Goss was charged with notice. He could not, therefore, be in legal good faith, nor did he have what the law deems a just title, both of which are essential to support the prescription of ten years.”
It appears from plaintiffs’ petition and the evidence introduced on the trial of the exception of prescription that plaintiffs’ father, James W. Howard, died in Caddo parish in 1875, and his wife, Martha A. Howard, the grandmother of the plaintiffs, died in 1877. They left as sole heirs two daughters, Mrs. Lou H. Tally, the mother of the plaintiffs, and Mrs. M. A. Hardenburg, the mother of the defendant C. H. Hardenburg, who was the vendor of the property in litigation to William Goss. James W. Howard must have left a will, as in the instrument filed by the plaintiffs, which is styled by them a “counter letter,” Mrs. Hardenburg is referred to as his dative testamentary executrix. What the situation or condition of his succession was, does not appear. It does appear that, at the succession sales made in the settlement of his estate, Mrs. Hardenburg became the adjudicatee of the property involved in this litigation. Independently of any consent by her sister, she had the capacity to purchase. Plaintiffs recognize as a fact, however, that she took the legal title to the whole property with the consent of their mother, Mrs. Tally. The ownership of the property unquestionably passed to her, even if it passed subject to legal contract rights which Mrs. Tally might have, resulting by virtue of legal agreements between the two. ' It by no means follows that, because Mrs. Tally was a daughter of the deceased, she became necessarily, by reason of that fact, the owner of one-half of the property. A judgment sale, on fixed terms and conditions, might have been needed to invest herself or her sister with title. It cannot be said that the judicial sales at which Mrs. Hardenburg- purchased were nullities. We do not understand plaintiffs to claim that they were. So far from this, plaintiffs claim title to the property through these adjudications, and affirmance of them. Though plaintiffs assert they are seeking to have decreed the nullity of the sale of an undivided half of the property to Mrs. Hardenburg, it is obvious that they are not doing so, but endeavoring, on the contrary, to have the purchase made by her inure, to the extent of one-half, to the benefit of their mother, and through her to themselves. Where a person furnished with money by another, with which to purchase for him a particular piece of property, engages to do so, and does in fact make the purchase — taking, however, the title in his own name — a suit by the principal against the agent to have the property declared to belong to him could be designated neithér as an action on declaration de simulation, nor as an action in nullity, though, if successful, the consequential result of the action would be to take the title out of the defendant, and place it in the name of the plaintiff. The object of the action would not be the avoidance of the *358 sale to the agent, but the enforcement by him of the rights which he had acquired. Plaintiffs are in error in supposing they are in this action acting adversely to their mother with reference to any act done by her to their prejudice, through an original action conferred upon them by law at their mother’s death, and opened in them favor at that time. They are proceeding in this matter under derivative, and not original, rights— rights held by them only under and through their mother. Their right of action is not a new one, but that which their mother herself held against her sister. The only change in the situation brought about by the act of 1884 was to widen the door as to the testimony to be adduced in behalf of parties bearing such relations to the deceased as to fall under the classification of forced heirs, in respect to the character of the evidence legally admissible in support of their action. Act No. 5 of 1884 establishes a rule of evidence, not a property right.
The words “forced heirs,” in tjiat statute, were used simply as descriptive of the particular class of persons in behalf of whom the change in the rule of evidence was intended to be made. The change in the rule •of evidence was to extend no further than as to them. The plaintiffs are mistaken in supposing that their mother would have been without a right of action against her sister, Mrs. Hardenburg, to force her to convey title to her of an undivided half of the property involved herein, had she come under .any legal obligation to have made the conveyance. She had a legal right to such an action as fully as had the plaintiffs after her death, with this difference only: that when she exercised her right she would have found more difficulty in the way of establishing her right -than would her forced heirs after her death, unless she had taken the precaution of securing in her favor written evidence of the necessary facts. The plaintiffs themselves assert that she brought such an action, but that the record was lost. What was alleged or claimed in that action is not set forth in plaintiffs’ x>etition, for evidently they do not know themeslves the char-, acter of the action. If such an action was brought as claimed, it would not have abated by the simple fact of their mother’s death, had it been an existing suit. Her heirs were free to make themselves parties to it and carry it on. Why they did not do so, we do not know. The fact remains that they did not do so, but, instead of this, abandoned it, to institute the present new and independent suit against the heir of their aunt Mrs. Hardenburg and his vendee, Goss. They seek, none the less, to utilize that suit so as to bring Goss under the operation of article 2453 of the Civil Code, as a purchaser of property pending an action claiming ownership of the same, and, as a lawyer, purchasing a litigious right. Article 2447. Mrs. Hardenburg, after her purchase, in 1876, was permitted to remain on the records as the owner of the property up to at least 1883, and no judgment has been rendered against her or her heir up to the present time. Assuming that the alleged suit instituted in 1883 by Mrs. Tally was one directed against her sister, Mrs. Hardenburg, claiming the undivided half of the property, the effect of such a suit would not have been to deprive the latter of the right of alienating the property during its pendency. She could, however, not alienate it so as to prejudice the rights of the plaintiffs. A sale so made would not be instantly null and void. Should, however, judgment be rendered in favor of the plaintiffs, the sale would be considered as the sale of another’s property, and it would not prevent the plaintiffs from being placed in possession by virtue of such judgment.
In this case, under such circumstances, Goss would have had the right to stand upon his purchase until judgment would have been rendered in the suit in favor of the plaintiffs. No such judgment has been rendered in that suit, and none will be hereáfter, as the suit has been abandoned. The abandonment of that action, if it was of the character claimed, places plaintiffs’ rights in the same position as if it had not been brought. There has been no attempt to show the character of that action, or that it was a pending suit in 1888. It was asserted from the bar that its object was simply to obtain possession of the instrument called the “counter letter,” and, that purpose having been accomplished, the suit abated and at once fell by force of that fact. That plaintiffs in the case, having obtained the instrument, caused it to be recorded on the-day of- *360 1888. In view of the action of the parties, there is considerable plausibility in this statement. However this may be, the suit was not a “live one” at the time Goss purchased the property. He testified that he did not know, at that time that such a suit had ever ■been brought, nor that such a person as Mrs. Tally had ever existed. As we have said, .this suit is not an action of nullity. It is nothing more than a petitory action brought against Goss; plaintiffs making simultaneously C. H. Hardenburg directly a party defendant with him, instead of waiting for him to have been called into the case in warranty. Plaintiff’s theory is evidently that, by and through .the execution of the alleged counter letter, their mother was recognized by Mrs. Harden-burg. as the actual owner of one undivided half of the property, and that the recording of that act in 1888 in the book of sales gave notice of her rights of ownership to the world. We do not take this view of the instrument, but, conceding it to have been an acknowledgment by Mrs. Hardenburg of her sister’s, present ownership, the effect of the recording of the same would not be necessarily to give rise to bad faith in.any one who might thereafter purchase the property from Mrs. Hardenburg or her heirs. There is no necessity for citing authority to sustain that proposition. Had the suit which plaintiffs refer to been a petitory one, as claimed, and had there been a judgment rendered in that case in favor of the plaintiffs, the situation of a party who had bought the property pending the suit would, under article 2453 of the Civil Code, have been very different from that of a person who would simply have bought property notwithstanding there had been a sale of the same, and the act of sale had been recorded.
Viewing matters from the standpoint of the so-called counter letter having in fact vested ownership at once in Mrs. Tally, and from the standpoint of its having been recorded prior to Goss’ purchase, and independently of the alleged petitory action brought by Mrs. Tally in 1883, we find nothing in this record which would stand in the way of Goss’ acquisition of the property by the prescription of 10 years, acquirendi causa. We do not consider, however, that the instrument designated as a “counter letter” recognized a present ownership in Mrs. Tally. It was simply an agreement or promise made by Mrs. Hardenburg to convey the undivided half of the property on certain stipulated terms and charges, which are not even alleged to have been complied with. It did not by its own force transfer the property, and no act of transfer has been made since. The recording of an act of promise of transfer does not deprive the party making the promise of the legal power and capacity to sell to others. If, in spite of the promise made, a sale is made'to a third person, the obligee is driven back to an action for damages against the obligor.
Plaintiffs claim that, even if the original' action is not now pending, it was pending when Goss made his purchases, and, being then pending, Goss’ purchase was struck ab. initio as absolute nullity, as the purchase of' a litigious right by an attorney at law, and, being null from the beginning, the subsequent abatement of the suit could have no-effect whatever. We do.not know, as a fact, that the suit was pending when Goss purchased; but, were this so, we are not prepared to say that the purchase of the property by him would have been the purchase of' a litigious right. Had the purchase made by him been the claims of the plaintiffs in that action, the position would have had more-force. Defendants in possession, perhaps, could have invoked in their favor and for their protection the provisions of law as to the purchase of litigious rights; but plaintiffs in a petitory action are protected from prejudice to them of their claims and pretensions, in the premises from a sale made pending a petitory action by a defendant in possession, by the provisions of Article 2453 of the Civil Code, so far as they are concerned, independently of any question of litigious rights.
We are of the opinion that the judgment of the district court was correct, and it is-hereby affirmed, with costs.