No. 7806.

IN THE MATTER OF THE ESTATE OF FRANCES PARKE LEWIS.

A will which devises the whole of the testator's property to one of her children, and the sons of that child, contains no substitution.

The will of a non-resident which, without legal cause, deprives her children, or grandchildren of their *legitime*, must, as to the immovable property of the testator situated in Louisiana, be reduced to the disposable *quantum*. But as to the *movable* property of the testator in Louisiana, its disposition by will must be governed by the law of the State where the will was made, and where the testator resided.

Where the testatrix leaving major and minor heirs, and who at the time of her death resided in Mississippi, owned property in Louisiana and the executor appointed in her will refuses to act, and a contest arises for the administration of the property situated in this State between an administrator appointed by the court of Louisiana with the approval of the testator's husband and son, and one apppointed by the court of Mississippi, the administration will be given to the one appointed by the court of this State.

APPEAL from the Parish Court of Iberville. *Cole, J.*

Geo. Wailes and Barrow & Pope for appellant :
First—A will executed in another State devising property situated in Louisiana must as to that property, whether movable or immovable,

25

be reduced to the disposable portion.   C. C. 1493, 1502, 1504 ; R. S. of 1870, sec. 3677 ; C. C. 1220 ; 17 A. 15 ; 23 A. 22.

Second—The powers of administrators appointed in different States extend only to the limits of the sovereigns creating them, and that neither allows the other to intermeddle with any assets within their respective jurisdictions.   17 An. 16 ; Burbank vs. Payne & Co., 19 An. 42 ; 8 La. 508 ; 2 N. S. 20.

The article C. C. above quoted says :   " The judge before whom such succession shall be opened, shall proceed to appoint or confirm the officer to administer it under the name and in the manner pointed out by the existing laws."

Art. 1121 (1114) C. C. fixes the order of preference to be observed in making appointments.

A dative executor is a private officer.   C. C. 2817 (2788).

Third—One who claims the administration of a succession must make due publication of his application.   C. C. 1114, 1116 ; C. P. 966, 167 ; 13 A. 582 ; 18 L. 402.

Fourth—Andrew H. Gay, who holds a power of attorney from Lawrence L. Butler, a beneficiary heir, which authorizes him to represent said heir, has a preference over Henderson, a non-resident, and a stranger to the succession.   21 A. 614 ; C. C. 1121 ; 3 A. 261 ; 23 A. 22.

Danl. Turnbull and Sam. Matthews for appellee :

First—Mrs. Butler's will was duly and properly probated, and in form is valid under the laws of Mississippi which govern its conception. (See transcript of probate proceedings before the Chancery Court of Harrison county.   R. pp. 11 to 24, also sections 974, 995, 1785, and 2388, Revised Code of Mississippi.   R. pp. 40 to 43).

As Mrs. Butler was a resident of, and domiciled in the State of Mississippi, and as movable property has no *situs*, but is governed by the law of the domicile, any disposition of property of that kind, valid under the laws of Mississippi, is valid every where.   See Rev. C. C. art. 10 [10] ; 8 Rob. p. 414 ; 9 Rob. p. 438 ; 12 Rob. p. 334 ; and 15 An. p. 155.

The disposition of immovable property situated here is not null, but simply reducible.   See Rev. C. C. art. 1502 (1489) ; 12 Rob. pp. 552 to 558 ; 1 An. 142.

Arguments made and authorities cited by counsel for appellants under this head are irrelevant, since the movable property belonging to this estate is not situated in the State of Louisiana.   15 An. p. 154.

The claim that the will contains a prohibited substitution, and is void for ambiguity, we do not think it necessary to discuss, but will let the will plead its own cause.

Second—That an administrator who has been appointed by the court of the State where the will was made and the testator lived, and where most of her estate was situated, is entitled to the administration of the property of the succession as situated in this State. 15 A. 244; C. C. 1596; 6 L. 688; 8 N. S. 232; 8 L. 86; 30 A. 887.

---

The opinion of the court was delivered by

DeBlanc, J. Mrs. Frances Parke Lewis, the wife of E. G. W. Butler, died in the State of Mississippi, leaving as her legal heirs two of her own children—Lawrence L. and Cora, and the issue of the marriage of a deceased daughter with George Williamson.

In her last will, which was twice probated, here and in Mississippi, she declared—and this stands uncontradicted—that she was a citizen and resident of the last mentioned State, named—as her universal legatees—her daughter Cora, the widow of W. B. Turnbull and the sons of said widow, and designated—as the executor of her will—Charles M. Conrad, of New Orleans, who declined to qualify in that capacity.

In 1876, on the 4th of September—a little over a year after the death of Mrs. Butler—Andrew H. Gay qualified as the administrator of her succession. He was appointed as such by the parish court of Iberville. On the 13th of said month, *nine days after* he had thus qualified, the administration of said succession, with the will annexed, was granted to Elliot Henderson, by one of the chancellors of the State of Mississippi.

On the 30th of April, 1877, Henderson presented a petition to the parish court of Iberville, in which he asks *to be recognized* as the executor of the last will of Frances Parke Butler, and that Gay's appointment as the administrator of her succession be revoked.

In Gay's answer, and in two interventions filed, one by the husband, the other by the son of the deceased, they contend :

1. That Mrs. Butler's will contains a substitution reprobated by our laws, and—if not—that the legacy made by her should be reduced to the disposable *quantum.*

2. That her will has not been probated by any court of this State, and is so vague as to render its execution an impossibility.

3. That the appointment, by a foreign court, of an administrator with the will annexed, does not—of itself—authorize him to interfere with an administration previously conferred by a court of this State, nor entitle him—by preference—to the appointment of dative testamentary executor.

4. That—if Gay's appointment as administrator should be revoked—one of the intervenors, the husband, as partner in community of the deceased, claims to be appointed as dative executor of her will.

In April last, we remanded this cause to the lower court, to try and determine two issues :

1. The validity or invalidity of the will, whether in whole or in part.

2. Who is entitled to be appointed as the executor thereof.

## I.

Mrs. Butler's will contains no substitution. She gave to her daughter Cora and the sons of the latter, the whole of the property of which she would die possessed, and then explained the causes which have induced her to thus favor only one of her several descendants. Those causes are not such as would justify any disposition intended to deprive her children or grandchildren of their *légitime*. This is not denied by their adversaries, and—therefore—as to the property situated in Louisiana and belonging to the succession of Mrs. Butler, the donation already referred to must be reduced to the disposable *quantum*.

There can be no doubt, as held by our predecessors, that—when a person dies, leaving property in two or more States, his property in each State, is—for the purpose of its administration—considered as a separate succession ; but can we—from that fact—deduce, as a necessary consequence, that—of whatever it may be composed, that separate succession cannot be—to any extent—disposed of, by testament, otherwise than according to our laws ?

The second paragraph of article 10 of the Civil Code provides " that the effect of acts passed in one country to have effect in another, is regulated by the laws of the country where such acts are to have effect," and the third paragraph " that the exception made in the second does not hold, when a citizen of another State of the Union, or a citizen or subject of a foreign state or country disposes by will or testament, or any other act *causa mortis* made out of this State, of his movable property situated in this State, if at the time of making said will or testament, or any other act *causa mortis*, and at the time of his death, he resides and is domiciliated out of the State."

Mrs. Butler died, and—at the time of her death—had her residence and domicile in the State of Mississippi, and there—by testament—disposed of the whole of her property, movable and immovable, and it is clear that, under the legislative provision which we have quoted, the effect of her testament—as regards her movable property—must be regulated by the laws of Mississippi, and—as regards the balance of said property—this is conceded—by the laws of this State.

C. C. 491—(483).

In Succession of Senac, this court held that the only exception to the rule laid down in article 483 of our Code, " that persons who reside out of the State cannot dispose of property they possess here, in a man-

ner different from that prescribed by our laws," is to be found in the 10th article of said Code, and that it is only under the conditions specified in that article, that foreign laws are permitted to operate in the disposition of property in this State.

2 R. 258.

As regards her movable property, the effect of Mrs. Butler's donation is to be regulated by the laws of Mississippi ; and—to determine the reduction to which said donation is liable under the laws of Louisiana, an aggregate must be formed of exclusively the property and things, or of the proceeds of the sale of the property and things which she owned *in this State* at the time of her death, and which—at that date and under our laws—were immovable by either their nature, destination, or the object to which they were applied ; and—this aggregate formed—by deducting therefrom the portion reserved to the forced heirs of the deceased.

C. C. 1493, (1480).

II.

Henderson and Gay ask, the first to be *recognized* in a capacity which—as yet—has not been conferred upon him, and it is that of dative testamentary executor—and the other, to be continued as administrator of a succession, which—as to the minor Williamson—is, by operation of law, accepted with benefit of inventory. Gay's demand is urged by the surviving husband and one of the forced heirs of Mrs. Butler. The two contestants seek to be recognized, each in his alleged capacity, and not one of them to be appointed as dative testamentary executor.

Henderson claims *on but one ground* that Gay's appointment be revoked, and that ground is that he alone, under his appointment by the Mississippi court, has the right to administer the successions opened here and in the adjoining State. In Burbank vs. Payne & Co., this court said : "It is our deliberate opinion that the powers of administrators, appointed in different States, extend only to the limits of the sovereigns creating them, and that neither allows the other to intermeddle with any assets within their respective jurisdictions ; and had any exception been taken to the right of the foreign administrator to stand in judgment, we should—without hesitation—have maintained it."

17 A. 16.

The Code provides : "That the successions of persons domiciliated out of the State of Louisiana, and leaving property in this State at their demise, shall be opened and administered upon as are those of the citizens of the State ; and the judge before whom such succession shall be opened, shall proceed to the appointment or confirmation of the officer to administer it under the name and in the manner pointed out by existing laws." C. C. 1220.

As a general rule, " if there be several heirs to a succession, some of whom have accepted unconditionally, and the others under benefit of inventory—as in this case—an administrator must be appointed to manage, until their partition, the effects of the succession." We have so held ourselves, and in Girod's Heirs vs. Girod's Executors, this court had then already said: " If it be true that the heirs of the deceased are entitled to the benefit of inventory, they cannot be deprived of the right of administering the succession according to the provisions of the Code on this subject." C. C. 1047 (1040); 18 L. 399; 30 A. 388, 801.

Before it was ascertained that Girod had left a testament, two of his nearest relations had been appointed as curators of his succession, and—alluding to that fact—the court added: " We are unable to perceive any valid reason why the circumstance of there being a will, the object of which is merely to make certain legacies which are to be paid out of the estate, and which are to become the debts of the heirs, if they accept, should alter their situation, and should have the effect of divesting them of their legal right to obtain the administration of the estate, whether it be under the denomination of *administrator*, or that of *dative testamentary executor;* the formalities to be observed, and the responsibilities and securities to which they are subjected are the same."

18 L. 400.

Mrs. Turnbull, one of the three legatees of Mrs. Butler, died after the testatrix, and her sons, who are residents of this city, have accepted, and were—on the 4th of October 1876—put in possession of their own mother's succession, which comprises the latter's share in the only legacy made by said testatrix—and we are at a loss to imagine, when we consider that all the heirs and legatees reside or are represented in this State, in whose interest, and under what principle of law or justice, we could—at the request of one who derives his authority, not from any clause of the will, but from exclusively his appointment by the court of a sister State—discharge an administrator appointed by a competent court of Louisiana, after legal delay and notice, on the application of the husband and with the approbation of the son of the deceased ; and— this done—place under the control of the foreign court and under the foreign administration, against the wish and will of the husband and son, the share of the first in the community, the *légitime* of the other !

" In regard to the title of executors and administrators, derived from a grant of administration in the country of the domicile of the deceased, it is to be considered—said Mr. Story—that the title cannot, *de jure*, extend, as a matter of right, beyond the territory of the government which grants it, and the movable property therein—as no nation is under obligation to enforce foreign laws prejudicial to its own rights, or to those of its own citizens." Conflict of Laws, p. 840, No. 512.

He adds : "It has hence become a general doctrine of the common law, recognized both in England and America, that no suit can be brought or maintained by any executor or administrator, in his official ·capacity, in the courts of any other country, except that from which he derives his authority to act in virtue of the probate and letters of administration there granted to him.

"If he desires to maintain a suit in a foreign country, he must obtain new letters according to the general rules of law prescribed in that country ;" but "the new administration is made subservient to the rights of creditors, legatees, and distributees, who are resident within the country where it is granted ; and the residuum is transmissible only, when a final account has been settled in the proper tribunal where the new administration is granted, upon the equitable principle adopted by its own law, in the application and distribution of the assets found ·there."

Conflict of Laws, pp. 841, 843, No. 513.

"Where administrations are granted to different persons in different States, they are so far deemed independent of each other, that a judgment obtained against one will furnish no right of action against the other, to affect assets received by the latter in virtue of his own administration ; for, in contemplation of law, there is no privity between them."

Conflict of Laws, p. 868, No. 522.

In Danes vs. Head, Chief Justice Parker said : "It would be but an idle show of courtesy to order the proceeds of an estate to be sent to a foreign country, the province of Bengal, for instance, and oblige our citizens to go or send there for their debts, when no possible prejudice could arise to the estate, or those interested in it, by causing them to be paid here, and possibly the same remark may be applicable to legacies payable to legatees living here."

3 Pick. R. 128.

Under these doctrines and our own law, a foreign administrator cannot sue to revoke the appointment made, by a competent court of one State, of an officer to administer upon a succession opened here, and more particularly when, as in this case, that officer was appointed on the application of the husband and with the approbation of a son of the deceased, and when her legatees—though present in the State—did not oppose that appointment and do not ask its revocation.

It is, therefore, ordered, adjudged and decreed that—in so far as it empowers Elliot Henderson to interfere with, and assume the administration of the movable property situated in this State and belonging to ·the succession of Mrs. Frances Parke Butler, and deprives Andrew H.

Gay of that administration, the judgment appealed from is avoided and reversed, and Henderson's action for the revocation of Gay's appointment as administrator of Mrs. Butler's succession in this State, dismissed at his costs in both courts.

It is further ordered, adjudged and decreed that, as amended by that partial reversal—the judgment appealed from is affirmed.