Cox et al. vs. Von Ahlefeldt et als.

No. 12,670.

50 1266
s105 559
s105 576

50 1266
109 160

50 1266
110 354

MRS. MARGARET R. COX ET AL. VS. MRS. NANNIE VON AHLEFELDT
ET ALS.

The power of the owner to dispose of his property by donations *inter vivos* or *mortis causa* is limited by the number of his children living when he dies, hence called forced heirs, and the disposable portion when he leaves a daughter and the children of two deceased daughters, grandchildren being counted in place of their deceased parent, is one-third; the other two-thirds is the *legitime* of the forced heirs. C. C., Arts. 1493, 1495.

This disposable portion is ascertained by adding to the property the deceased leaves at his death the value of all property he has disposed of by donations *inter vivos*, deducting his debts, and the residue determining the disposable portion according to the number of his children, fixes also their *legitime* as his forced heirs. C. C.. Arts. 1505, 1506

Whether forced heirship is ownership in its full sense, of which the heir is seized of right, as applied to property embracing the *legitime* in the hands of third persons holding under alienations by the donors to whom the property has passed by the donations, nominal sales or similar acts of the deceased donor to the prejudice of his forced heirs, it is clear that by his death the right of action is vested in them to reduce or set aside such acts that impair their *legitime*, and to recover it from third persons holding under transfers from the donees. C. C., Arts. 1493, 1495, 1504, 1517; Code Napoleon, Arts. 930, 2444; 2d Troplong, p. 127, Secs. 736, 741; p. 287, Sec. 903; p. 292 *et seq.;* 2d Mourlon, p. 292, Sec. 593; p. 311, Secs. 620, 621; 3d Boilleux, commenting on Art. 920, Code Napoleon.

This right of action of the forced heir passes to his heirs and assigns. C. C., Art. 1504; Code Napoleon, Art. 930; 12th Laurent, p. 185, Sec. 139; 3d Boilleux Comentaire sur Article 920, Napoleon Code; 2d Mourlon, pp. 311, 313, 623; 12 An. 465.

This suit of the heir of the forced heir is not the revocatory action, but one of "reduction" or "revendication" to preserve or recover the *legitime*, of which he can not be deprived by the donation or similar acts of the deceased donor, and to which no alienation by the donees can convey title. C. C., Art. 1517; C. N., Art. 930; 6 Martin, 529; 12 An. 401; 32 An. 357.

APPEAL from the Twentieth Judicial District Court for the Parish of Ascension. *Guion, J.*

*Fenner, Henderson & Fenner, Richard McCulloh* and *Leigh Robinson* for Plaintiffs, Appellants.

*Carleton Hunt, Samuel L. Gilmore, J. C. Gilmore, R. N. Sims* and *E. N. Pugh* for Defendants, Appellees.

Argued and submitted December 30, 1897.
Opinion handed down February 7, 1898.
Rehearing refused June 30, 1898.

The opinion of the court was delivered by

MILLER, J.   The plaintiffs, collateral heirs of Susan Robinson, a granddaughter of the late Oliver Beirne, sue his testamentary heirs, to establish the asserted rights of the plaintiffs in respect to that part of the immovable property in Louisiana alleged to have belonged to Mr. Beirne at the date of his death, and which he could not under our law dispose of to the prejudice of his children and their descendants, the plaintiffs claiming to have succeeded as heirs to the rights of Susan Robinson, the granddaughter and one of those our law made forced heirs of Mr. Beirne, living, at the date of his death, but since deceased.

The domicile of Mr. Beirne was West Virginia.   He executed his last will in 1885 and died in 1888.   He left surviving his daughter, Mrs. Von Ahlefeldt; the children of his predeceased daughter, the issue of her marriage with William Porcher Miles, and Susan Robinson, the child of another predeceased daughter.   The will made some provision for Susan Robinson by directions respecting the West Virginia property of Mr. Beirne, but constituted as his residuary legatees his grandchildren, the issue of the marriage of his predeceased daughter with William Porcher Miles.   A few days after the date of the will Mr. Beirne by authentic act executed in this city conveyed to Mrs. Von Ahlefeldt, his daughter, all his immovable property in Louisiana, consisting mainly of sugar plantations, aggregating a large value, the price stipulated being one million dollars, for which Mrs. Von Ahlefeldt made ten promissory notes of equal amounts, two of which were payable annually from one to five years after their date.   A year later, that is in January, 1887, about the date of maturity of the one-year notes, Mr. Beirne gave written instructions to his testamentary executors in the form of a letter to them addressed, and which, with his will, came into their hands when he died, by which instructions the executors were to return to Mrs. Von Ahlefeldt all her notes on the execution of a conveyance by her to the Miles children of all the property conveyed to her by Mr. Beirne.   At a later date, that is in January, 1888, it is charged Mr. Beirne acquired for himself, placing the legal title in Mrs. Von Ahlefeldt, another plantation in Louisiana.   After Mr. Beirne's death Mrs. Von Ahlefeldt conveyed to the Miles children, as contemplated in the testamentary letter of Mr. Beirne, all the property conveyed to her, as well as the Houmas plantation, the title of

which was in her name. The consideration of this sale was stated to be the return to Mrs. Von Ahlefeldt of the ten notes she had executed and three hundred thousand dollars besides, but the petition charges that the three hundred thousand dollars represented no consideration given by the Miles children for the property, but consisted of the legacy to Mrs. Von Ahlefeldt of two hundred thousand dollars they owed her as residuary legatees of Mr. Beirne, and the other one hundred thousand dollars was for the relinquishment by Mrs. Von Ahlefeldt of her other rights as his forced heir, largely exceeding in value, the petition charges, one hundred thousand dollars. Subsequently, the Miles children, as residuary legatees, conveyed to the Miles Planting Company the sugar plantations, and to the Tulane Educational Fund the city property, all embraced in the sale to the Miles children by Mrs. Von Ahlefeldt.

The petition charges that the sale by Oliver Beirne to Mrs. Von Ahlefeldt was a simulation, as was the placing of the title to the Houmas plantation in her name, Mr. Beirne being the real purchaser and owner; that no price was ever paid by Mrs. Von Ahlefeldt for the property sold her by Mr. Beirne, no possession ever passed to her, but that he, as owner, remained at all times in possession of all the Louisiana property, and that the whole purpose of the sale to Mrs. Von Ahlefeldt and placing in her name the Houmas purchase was to disguise and effect the testator's intention to leave at his death the Louisiana property to the Miles children, constituted prior to the alleged fictitious sale, and prior to the Houmas purchase, his universal legatees. With respect to the conveyance by Mrs. Von Ahlefeldt to the Miles children, the petition substantially charges that the conveyance for the return of her notes, and the additional consideration of paying her the legacy of two hundred thousand dollars owed by the children, and for the relinquishment of her rights as forced heir of Mr. Beirne, was simply transmitting the property to the Miles children as residuary legatees and not as purchasers; that the Von Ahlefeldt sale was hence a fraudulent simulation, in so far as it purported to represent any ownership in Mrs. Von Ahlefeldt or conveyance of ownership by her, and that the residuary legatees, in their conveyances to the Miles Planting Company, admit the simulation of their purchase from Mrs. Von Ahlefeldt by describing the property as inherited by them from their deceased grandfather, Oliver Beirne. Thus, the petition in

effect charges that all the immovable property in Louisiana, sold by
Mr. Beirne to his daughter, Mrs. Von Ahlefeldt, and that purchased
by him and placed in her name, was owned by him when he died;
that under the law he could not dispose of two-thirds of that prop-
erty; that Susan Robinson, as the child of his deceased daughter,
became vested with title to one-third of the two-thirds, and that by
the death of Susan Robinson, leaving no ascendants or descendants,
plaintiffs inherit concurrently with her other collateral heirs five-
sixths of her rights; the petition further charges that if, notwith-
standing the allegation of fraudulent simulation, the acts attacked
by the petition are deemed donations, embracing as they do all the
immovable property of the testator in Louisiana, then the donations
are void, because in excess of the disposable portion, one-third,
the testator leaving at his death one daughter and the children of
two deceased daughters; the petition further avers that as to that
portion of the property left by the testator, conveyed by the resid-
uary legatees to the Tulane Fund, inasmuch as a college has been
built on the property by the purchasers, petitioners confine their
demand to their portion of the price paid by the purchasers, but if
that relief be denied, they reserve their right as forced heirs to
assert their demand for their share of the property, and as to the
sugar plantations conveyed to the Miles Planting Company it is
charged all are subject to plaintiffs' rights. The relief asked is that
the sale to Mrs. Von Ahlefeldt and her title to the Houmas plantation
be decreed simulated, that all that property be adjudged that of
Oliver Beirne at the time of his death; that the title of Susan
Robinson to one-third of two-thirds of the property, and petitioners'
rights to five-sixths of two-ninths as her heirs be recognized; that
there be decreed an accounting for revenues and all other necessary
relief. The exceptions of no cause and no right of action and
of prescription was sustained, and plaintiffs appeal.

Under our law the father leaving three children can dispose of but
one-third of his property, and grandchildren take the place of their
deceased parents. That portion of his property the testator can not
dispose of to the prejudice of his children accrues to them at his
death, and is called their "*legitime.*" If by donations *inter vivos* the
deceased has infringed on the *legitime* the law grants to the forced
heirs the appropriate action to recover the property thus donated,
or so much as is requisite to make up the *legitime*. If the *legitime* is

encroached upon by the testamentary dispositions of the deceased, the Code gives the forced heir the requisite action against the legatees to preserve the *legitime*. C. C., Arts. 1493, 1494, 1495, 1504, 1517. Until the death of the parent the *legitime* has no existence. When death occurs, then the disposable portion is ascertained by adding to the property left by the deceased, the value at the time of the death of all the property donated by him, his debts are deducted and the disposable portion is adjudged by the proportion the number of his children then living bears to the residue. It results that donations *inter vivos* retain full effect during the life of the donor, and even after, unless attacked within the prescribed period by the forced heirs, their heirs or assigns. C. C., Arts. 1502, 1503, 1505, 3542.

As we appreciate the plaintiffs' petition they sue to subject the Louisiana property left by Mr. Beirne, to the demand for that portion of the *legitime* of Susan Robinson accruing to plaintiffs as her heirs. The result of all the allegations in the petition is, the import that by Mr. Beirne's will in favor of the Miles children, followed by the nominal sale to his daughter, Mrs. Von Ahlefeldt, and her conveyance to these children after his death in accordance with his request contained in the testamentary paper he left, all the Louisiana property has thus been transmitted to the Miles children, who in turn have conveyed to the Miles Planting Company, fully apprised, it is charged, that the conveyance embraced the *legitime* of Susan Robinson. The suit is directed against the Miles children as legatees, and necessarily against the Miles Company as holding the *legitime* on which plaintiffs assert their demand. It is manifest, the action is entirely distinct from the revocatory action, *i. e.* that of creditors to avoid the fraudulent contracts of their debtors, so much discussed at the bar. The Code describes a suit of this character as that of "revendication" to obtain the *legitime* of the heir. Civil Code, Art. 1517. The case is presented on pleadings that admit all the allegations in the petition.

The legal questions are as to the effect on immovable property in Louisiana of Mr. Beirne's will in favor of the Miles children to the exclusion of his grandchild, Susan Robinson: whether under our law such a conveyance as that by Mr. Beirne to Mrs. Von Ahlefeldt accompanied with the direction to convey to the heirs named in his will, and that accomplished as he had directed, and all this followed by the transfer by the Miles children to the Miles Planting Company,

places the property beyond the demand for the *legitime* of the grand-child: the further question is, whether the plaintiffs, the collateral heirs of Mr. Beirne's forced heir, are clothed with her rights, and whether the suit can be maintained in the form it is brought and for the relief it seeks.

That the will of Mr. Beirne, in so far as it seeks to direct the disposition of immovable property in Louisiana, must conform to our law, in respect to forced heirship, needs but the statement. The argument that questions the plaintiffs' rights as collateral heirs of Susan Robinson, might be deemed to come first, in order of discussion, but it will be more satisfactory to treat the question in connection with others arising in the case.

A large part of the discussion has been devoted to the nature of forced heirship. It has been insisted it creates no ownership, but gives only a right of action. In support of this it is urged that any donation by the owner is valid in his life and retains its force after his death, unless successfully assailed by his forced heirs. All this as to the force of the donation is to be accepted and results from the provisions of the Code. But in our view the character of the title of the forced heir to his *legitime*—*i. e.*, that part of the property the owner leaving children can not dispose of to their prejudice, is to be determined not merely by the action the law gives the forced heir to recover the *legitime* but by the provisions of the Code that confer the right the action enforces. That children can not be deprived by their parent of that portion of his estate the law " reserves for them " conveys the idea of ownership incident to the parent's death, and an ownership supported by the action the Code gives when that death occurs, to be exerted against the legatees or heirs of the testator as well as against the third persons the donees of the testator, who may be in possession of the *legitime*. C. C., Arts. 1493, 1495, 1517. As one of the commentators puts it, it is not the mere right of heirship by which the heir succeeds to the *legitime*, " mais la sienne propre," and throughout the elaborate discussions of the French jurists, " la réserve" or *legitime* is treated as accruing to the forced heir at the death of the parent as effectively as the death of the owner vests title to the property he leaves, in his heirs generally. The forced heir, too, consistently with his peculiar title of far superior nature to that of the ordinary heir, takes the *legitime* without liability that attaches to the ordinary heir for the debts of

the deceased, nor does the *legitime* brought back to the succession by "the effect of the revendication or reduction" become subject to those debts. 2 Troplong, p. 292, par. 910 *et seq.*; 5 Toullier, p. 112 *et seq.*; C. N., Art. 921; Civil Code, Art. 1517. In the light of the Code itself, made clearer if that were possible, by that shed by the French commentators, it seems to us, not at all in accord with the law, to treat the *legitime* as vesting a mere right of action. That action is simply the correlative or "la sanction de la réserve naît avec elle." 2 Mourlon, p. 311.

Nor do we think the argument for the defendant more successful in the effort to withdraw the title to the *legitime* from the operation of that principle of our law that makes the death of the owner vest all his rights in the heirs. Civil Code, Arts. 940, 941, *et seq.* The application of this principle, "le mort saisit le vif," is made more distinct by the articles of the Code which deem the forced heir so completely seized of right of all the succession property as to require the legatees to demand of the forced heir the delivery of the legacies. C. C., Arts. 392, 893, *et seq.* It is contended the forced heir can not be deemed seized of right of the *legitime* when it is held by third persons and an action is necessary for its recovery. This argument is supposed to derive strength from the provisions of the Code that give to the donation exceeding the disposable portion full effect unless set aside by the action of the heirs; hence it is contended the forced heir can not be deemed seized—*i. e.*, the owner of that property actually in the hands of those holding under titles from the owner to whose succession the heir is called. It seems to us the argument loses its apparent force when it is considered that the axiom of our law, "le mort saisit le vif," supposes all property donated by the parent to the prejudice of the *legitime* to be returned to the succession of the deceased parent, when he dies, so as to form part of the property he leaves. C. C., Art. 1505. Thus the donee, when the donation exceeds the disposable portion, holds the *legitime* during the life of the donor by a title conveying no ownership in the ordinary sense, but by a tenure determinable by his death when by the operation of forced heirship the property is brought back to his succession, and brought back freed from any of his debts, and with the restoration of fruits from the date specified in the Code. C. C., Art. 1515. Hence all the French authorities treat the opening of the succession, *i. e.*, the death of the deceased,

as extending to and including the *legitime*; that is, by the death the *legitime*, though in the hands of the donee or of others to whom it may have been conveyed by the owner, is brought back and treated as part of the succession property. '' Bien qu'etablie pour des raisons d'ordres public, la reserve differe point de la succession, or des que le droit hereditaire est ouvert par le deces du defunt il se transmet avec ce patrimoine de l'heritier et il peut etre exercé comme tout droit pecuniaire par les creanciers de l'heritier.'' 12th Laurent, p. 185, par. 130; 2d Mourlon, pp. 311, 313; Boilleux, commenting on Art. 920, C. N. We think, therefore, the forced heir is seized of right of the *legitime* by the death of the parent, and the fact that the property composing the *legitime* is then in the hands of third persons is no obstacle to the vesting of the right of the forced heir. But whether or not forced heirship is ownership in its fullest sense, or whether the forced heir is or is not within the rule '' Le mort saisit le vif,'' seems to us a discussion not at all calculated to aid the defendant's case. It is quite certain the right of action of the forced heir for his *legitime*, springs into existence with the death that calls the heir to the succession. That incontestible right of the forced heir of Mr. Beirne the plaintiffs seek to exercise, and that other question, whether the plaintiffs as collateral heirs of the forced heir are clothed with her rights, remains for examination.

The Code declares that the reduction of the donation *inter vivos* or *mortis causa* can be claimed '' only '' by the forced heir or by his heirs or assigns. '' Only '' emphasizes that the heirs of the forced heir can sue, and whether they sue the legatees to reduce the testamentary disposition in excess of the disposable portion, or to '' revendicate '' when the *legitime* is in the hands of the donee or others holding under titles from the deceased, the suit of the forced heir is derived from the articles of the Code that transmit the rights of the forced heir to his heirs. C. C., Arts. 1504, 1517. Against the express language of the Code it is insisted, that it is only the forced heir of the forced heir that the Code intends shall have this right to sue. We are thus asked to weave into a clear, unequivocal article of the Code, as to those capable of exerting the action under discussion, a qualification surely not expressed nor implied, as we think, by any fair interpretation of language. In support of the argument our attention is directed to the foundation of the limitation of the parent's power to

dispose of his property; that is, the obligation of the parent to the child. It is hence contended the law restricts the action to children and their descendants. This policy of the law is illustrated by the copious citations of authority in the discussion at the bar and furnished in the briefs. All the commentators announce that policy and it is carried out in the Code: "En general chacuns peut disposer librement de ses biens, ne amoins la loi limite cette faculte en raison de l'existence de certains heritiers qu'elle favorisse specialement. Ces heritiers sont les descendans et les descendans l'orsquil en existe." 3d Boilleux, commenting on "la portion disponible et de la reduction." C. N., Art. 913. Undoubtedly the law refuses to the collateral heir of the donor any right to attack his dispositions of his property. The Code on this point is too clear to need any authority. If plaintiffs were suing as collateral heirs of Mr. Beirne they would be repelled by the text of the Code. It is insisted that the same theory that denies the collateral heir of the donor any right to assail his dispositions *inter vivos* or *mortis causa* should exclude the collateral heir of the forced heir who goes to the grave without any such attack. But the question is whether the Code has carried out the policy under consideration to the extent asserted in the argument. The forced heir of the donor, the Code declares, shall have the right to attack any of his dispositions that impair the heirs' *legitime*. But the Code also declares that the heirs or assigns of the forced heir shall have the same right. Any argument against the action of the heirs of the forced heir, founded on policy, must be referred to the articles of the Code that enforce the policy with respect to the forced heir of the donor, but does not enforce the policy against the heir of the forced heir. If we are to give effect to the Code as it is written, the plaintiffs as the collateral heirs of the forced heir of Mr. Beirne are brought clearly within the scope of the article of the Code; that gives this action not only to his forced heir, but also to the heirs and assigns of the forced heir. It is urged, too, that collations can be demanded only by children and their descendants of the owner, to whose succession they are called. Civil Code, Arts. 1228, 1235. This is on the theory of equality among children. The analogy drawn from the articles of the Code on the subject of collations is also supposed to be fatal to the transmission of the action under discussion in this case to the heir of the forced heir. It is claimed, oo, that the statutory provision for the widow and children in

necessitous circumstances, limited as it is to the persons named in the statute; the marital fourth, restricted as it is to the needy spouse, are all guides to the conclusion that the plaintiffs, as collateral heirs of Susan Robinson, do not succeed to her rights as the forced heir of Mr. Beirne. Arguments deduced from supposed analogies depend for their strength on the similitude of the subject supposed to furnish the analogy, with the subject to which it is proposed to apply the analogy that is asserted. It would not readily occur that our law respecting collations; or the provision for the surviving spouse left in distress; or that the widow and children of the insolvent husband, could afford any aid whatever in solving the question here, whether the action of the forced heir for his *legitime* passes to his heir. With due consideration of this line of authority resting on supposed analogies, we have been unable to find the least restriction or qualification of the explicit article of the Code that the rights of the forced heir passes to his heirs. If we are to go beyond the Code, we have the same instruction. The article of the Napoleon Code similar to that of our Code on this subject is restricted to donations *inter vivos*. The right of the forced heir to claim the reductions of donations *mortis causa* was deemed too clear to require any express provision; such donations in excess of the disposable portion were left to that adjustment, incidental to the application of the property left by the deceased to the payment of his debts, including the *legitime* of the forced heir. The Napoleon Code gives the action to reduce the donations *inter vivos*, and to revendicate when the *legitime* is in the hands of the donee or others claiming under titles of the deceased, to the forced heir and *to his heirs and* "*ayants cause*," creditors being included under this last term. C. N., Art. 921, 930. Our Code discarded this last term which included creditors, preserving the more restrictive word "assigns" and recognizing the right of action of the heirs of the forced heir. In the discussions of the French jurists, unless it has eluded our research, there is not the trace of any question that the right of the forced heir for the recovery or preservation of his *legitime*, passes to his heirs without qualification of any kind. The passage from Laurent, already cited, epitomizes the concurrence of the French commentators on his subject. 12th Laurent, p. 185; 2d Mourlon, p. 311, 313; 3d Marcadé, p. 472. It seems to us the conclusion is irresistible that whether tested by the Code sufficiently clear, or by the jurisprudence of France, that the right of

action the plaintiffs exercise in this case passed to them as the collateral heirs of Susan Robinson.

It is claimed on behalf of the defendants that the petition is inconsistent in its allegations, as well as in its prayer for relief. It is urged that the attack on the conveyance to Mrs. Von Ahlefeldt as fraudulent, treats it as serious, and the prayer that the conveyance be annulled is also inconsistent with the other allegations of the simulation of the conveyance. The averments that no price was paid by Mrs. Von Ahlefeldt, that no possession passed to her; that ownership with all the control that ownership gives was exerted by Mr. Beirne at all times while he lived, convey in the most expressive terms the simulation of the conveyance. It does not occur to us that the import of these allegations is changed because of the word used by the pleader to designate the motive of Mr. Beirne, nor that the simulation, so distinctly alleged, disappears because of the prayer that the conveyance be annulled. It is further insisted that the defendants were entitled to be apprised whether the conveyance was assailed as a simulation, and if that be the view of the petition, the suit can not be maintained because there is no averment that the conveyance, if simulated, if available as a donation, exceeded the disposable portion. Our jurisprudence was that the heir could not assail the dispositions of property by the donor to whose succession the heir was called, unless the dispositions exceed the disposable portion, was changed by the Act No. 5 of 1884. Irrespective of any encroachment on the *legitime*, that act confers on the heir the right to attack any simulated sale by which the owner, to whose rights the heir succeeds, has sought to dispose of his property. Rachal vs. Rachal, 4 An., p. 501; Croizet vs. Gaudet, 6 Martin, O. S., p. 529; Hopkins vs. Buck, 5 An., p. 487. Moreover, under the charge that the conveyances to and by Mrs. Von Ahlefeldt embraced all the immovable property of Mr. Beirne in Louisiana, it seems to us the prejudice to the *legitime* of the grandchild attempted by those conveyances is substantially averred. We think, too, that the plaintiffs under the allegations in the petition were entitled to ask the alternative relief that if the conveyance to Mrs. Von Ahlefeldt should be deemed a donation, that it be annulled to the extent it exceeded the disposable portion. It is also argued on behalf of the defendants that the prayer of the petition that the transfers by Mrs. Von Ahlefeldt and that by the Miles children to the

Planting Company be annulled in so far as these conveyances impair· plaintiffs' rights supports the objection to the action. If, however, the suit is viewed as that of the heir to recover the *legitime*, the fair import of the petition, the avoidance of the transfers of Mrs. Von Ahlefeldt and that to the Miles Company to the extent sought by the petition are to be deemed the necessary incidents of the relief afforded by the law. Inasmuch, too, as the transfers to the Miles Company passed the interest of Mr. Beirne's heirs, parties to that conveyance, to ask, as the petition does, that the transfer be annulled only so far as it seeks to impair the plaintiffs' rights, is entirely consistent with the measure and limit of the relief to which they are entitled. It is claimed the Miles children are to be treated as purchasers from Mrs. Von Ahlefeldt. Under the allegations of the petition admitted by the exceptions there was no price paid by the children; the three hundred thousand dollars stipulated was the amount of the legacy due to Mrs. Von Ahlefeldt and for the surrender of her rights as an heir. The whole purpose of the purchase, the petition charges, was to accomplish Mr. Beirne's purpose to dispose of all his Louisiana property so as to make the Miles children the beneficiaries. The petition treats the purchase as fictitious, known to all the parties. In that view the purchase interposes no obstacle to this suit. Again, if the conveyance by Mr. Beirne was fictitious, embracing the *legitime* as charged in the petition, neither that conveyance, or that by which Mrs. Von Ahlefeldt transferred to the children, whatever consideration they might have given their co-heir, Mrs. Von Ahlefeldt, no portion of it accruing to the grandchild or her heirs could affect the plaintiff's rights, if we are to give due effect to the allegations of the petition. Mrs. Von Ahlefeldt, as the case is presented on the pleadings, acquired no title and could convey none to the *legitime* of the grandchild. Nor in our view do the Miles Company, acquiring with full knowledge, the petition charges, of the rights of the grandchild, stand in any better position than their vendors. It is our conclusion the petition in its allega-. tions and the relief it seeks, is consistent with the suit the law gives to asset the *legitime* of the forced heir when it is held at the owner's death, by titles from him, which the law does not make effective against his forced heir or against the heirs of the forced heir.

We have given due attention to the argument that the plaintiffs are estopped from disputing the title of the Miles children because

of the qualified demand of the plaintiffs in respect to that portion of
Mr. Beirne's property conveyed to Mrs. Von Ahlefeldt, by her to
the Miles children, and by them to the Tulane fund. We understand
the plaintiffs' position in this respect defined in their petition to be:
they are entitled to their share of the property, but as it has been
sold to an educational institution and a college has been erected on
the ground, that plaintiffs will take their proportion of the price if
practicable, otherwise they claim their portion of the property itself.
This it is claimed is a recognition of the title of the Miles children.
Claiming the price without qualification would be a ratification of the
sale to the Tulane fund; but the conditional claim is, in our view, no
ratification of that sale, and, least of all, none as to the other prop-
erty held by the Miles Planting Company.

The pleas of prescription are met by the allegations of the insanity
of the grandchild; and if these allegations are true there was a sus-
pension of prescription. This issue, therefore, with the others, must
be tried.

We have taken this controversy, as we are bound to do, on the
assumption of the truth of the allegations in the petition. On the
allegations we think plaintiffs are entitled to be heard. In our view
the petition shows a right of action in plaintiffs and a cause of
action, if there is a distinction between the cause and the right, as
the exceptions imply.

It is therefore ordered, adjudged and decreed that the judgment
of the lower court be avoided and reversed, that the defendants'
exceptions be overruled and that the suit proceed to trial on the
merits.

BREAUX, J., concurs in the decree.

Rehearing refused June 30, 1898.