(33 South. 116.)

No. 13,957.

CLARK v. HEDDEN et al.

(April 14, 1902.)

DESCENT AND DISTRIBUTION—DISGUISED DONATION—COLLATION—EVIDENCE.

1. In a suit by an heir against his coheirs to compel them to collate real estate transferred to them by the deceased by contracts of sale, but which sales are attacked as having been mere donations in disguise, the defense being that the consideration of the sales was a debt due to the defendants by the deceased for the unpaid price of property conveyed by them to the deceased, parol evidence is inadmissible to show that the conveyance to the deceased, which, according to the authentic act evidencing it, was a dation en paiement, was in reality a sale, and that only part of the price was paid, the deceased remaining indebted to the defendants for the remainder. Such evidence would contradict the written act, but as explanatory of the consideration of a note given by the deceased to one of the defendants, and in rebuttal of the allegation that such note was without consideration, parol is admissible to show that the transfer of property in question was not a dation en paiement, but a sale, and that the note in question was given in payment of the price. Such testimony does not deny the transfer of the property, nor the payment of the price, but merely explains the manner of the payment, and accounts for the giving of the note.

2. In a suit by an heir against his coheirs for the collation of disguised donations, after the plaintiff has made a prima facie showing that the transfers were gratuitous the burden shifts to the defendants to show that the transfers were onerous.

3. Collation of revenues is due from the time of the death of the deceased only when the suit to compel same has been brought within the year; otherwise it is due only from judicial demand. The fact that the donations complained of were disguised under the form of sales makes no difference, unless thereby the complainant has been kept in ignorance of his right to demand the collation.

4. An heir must collate whatever he has received in excess of his share, unless same has been given as an extra portion. The intention to give as an extra portion must be indicated in an unequivocal manner, and will not be presumed from the fact that the donations were made under the guise of contracts of sale.

(Syllabus by the Court.)

Appeal from civil district court, parish of Orleans; George H. Théard, Judge.

Suit by Mrs. Hannah Hedden Clark against David C. Hedden and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Harry H. Hall, for appellants. Fenner, Henderson & Fenner, for appellee.

PROVOSTY, J. Plaintiff brought this suit to compel her brothers and sisters, D. C. Hedden, Mrs. Anderson, H. H. Hedden, and Helen Grace Hedden, to share with her, with the equality prescribed by our law, the property of the succession of their mother, Mrs. E. A. Hedden. Defendants urged by way of exception that, the mother having been at the time of her death a resident of the state of Tennessee, the part of her succession consisting of money and other personal property was not amenable to the jurisdiction of the courts of this state. On the trial they proved conclusively the change of domicile from New Orleans to Chattanooga, and plaintiff now restricts her demand to a division of the immovables situated in this state, and to an accounting for the revenues of the property from the time of the death of the mother.

The main issue is whether three sales of real estate—one to Helen Grace Hedden, of the Canal street property, in 1890, for $10,000; one to Helen Grace Hedden and Mrs. Anderson, of the Common and Carondelet streets properties, in 1893, for $25,000; and one to D. C. Hedden and H. H. Hedden, of the St. Charles and Fulton streets properties, for $35,000—were real sales, or merely disguised donations.

In 1866 Mrs. Hedden went into possession of the estate of her husband, appraised in the inventory of his succession at $132,910.16, of which $124,000 was immovable property and $8,910 personal property, and of which she was owner of two-thirds as partner in community and legatee. Two of the defendants were still minors,—H. H. Hedden and Helen Grace Hedden,—and she was their tutrix. In 1886, after 20 years of administration of the estate, she made a full and final settlement of the succession with her children.

The authentic act evidencing this settlement, after reciting the appearance of the parties before the notary, goes on to recite that whereas, Henry Hamilton Hedden, husband of Mrs. Hedden, and father of the other appearers, died in 1866, leaving a succession, whereof Mrs. Hedden was · owner of two-thirds and the other appearers were owners of the other one-third; and whereas, at the time of the marriage of Mrs. Clark, her father had made his note in her favor for $10,000, and Mrs. Hedden, since the death of the father, had paid the note, amounting, with the interest, to $11,600; and whereas, D. C. Hedden had received from the mother a like sum of $11,600; and whereas, Mrs. Anderson had had and received from the mother in property and money a like sum of $11,600; and whereas, H. H. Hedden and Helen Grace Hedden had had and received from the mother each a like sum of $11,600,—the said Mrs. Clark, David C. Hedden, Mrs. Anderson, H. H. Hedden, and Helen Grace Hedden, in consideration of the premises, sell to their said mother all their rights in and to the succession of their said father, without any exception or reservation whatsoever, the sale being made in consideration of the $56,600 received from the mother as hereinabove stated, and for which the mother gives the vendors acquittance and discharge. The act further recites that Mesdames Clark and Anderson are released from the obligation to collate to the succession of the mother the $11,600, stated in the act to have been donated to them.

The year after making this settlement Mrs. Hedden removed to Chattanooga, where her son H. H. Hedden was already established in business; and she lived there to the time of her death in 1895, the other defendants living with her.

Whether the basis on which Mrs. Hedden made the settlement with her children, namely, $56,000 for one-third of the estate, was or not an approximately exact valuation of the estate, does not appear. Nor does it appear whether she thereafter increased her estate; but the presumption is that she did, for the year after the settlement she purchased another piece of real estate for $14,950, of which $4,983.33 was cash; and the proof is that she was an intelligent woman of economical habits and inexpensive tastes.

It is not pretended that Mrs. Clark received one cent of the estate of her mother before or after the death of the mother, although the relations between them were ever kind and affectionate; and it is not denied that the defendants received the entire estate of the mother. It is admitted that at her death Mrs. Hedden had no property in her name, and it is proved that on the day after the execution of the sales the defendants agreed to pay her $140 per month as long as she lived, and that they did pay her this alimony up to the time of her death.

Four or five months after the death of Mrs. Hedden, H. H. Hedden handed to Mrs. Clark the following letter in an unsealed envelope:

"My Dear Daughter Hannah, now Mrs. S. W. Clark:

"A few months ago I decided to distribute my property among my children before my death, and did so without asking any one's advice. I have divided it, giving each one what I considered right, and with which distribution each one expressed themselves satisfied. I did not include you in the distribution of the real estate and other property, as I considered that you had already received from me a more valuable share than the rest of my children in the good will of the grocery store of your father, which good will I gave to you without receiving anything for it, which was given to you when you were young, and which you have had the benefit now for over twenty years. I consider the good will of the store is much more valuable than any share of the property received by the other children.

"I give you that as your portion of my estate.

"I write this so you may understand that in my division of my estate I thought of you as much as the other children, and to explain

why you were not included in the division of the real estate made. It was not intended as any slight to you, as I have the same love and affection for you as for any of my children.

"Your loving mother,
"[Signed]   Elizabeth Hedden."

"I read the document in the presence of Howard Hedden," says Mrs. Clark, "and expressed to him my indignation at being so treated, and said it was the most unjust thing I ever heard of."

It may be well to mention here that "the good will of the grocery store of your father," referred to in the letter as having been given to Mrs. Clark, was not so given, and that Mrs. Hedden was under an unaccountable misapprehension in that regard. The facts are that Mr. H. H. Hedden, the father of plaintiff, in the year of his death, took into partnership with him in his grocery business Herman Meader and S. W. Clark, the husband of plaintiff, as equal partners, the partnership to last one year; and that at the termination of the year, Mr. Hedden having in the meantime died, Clark and Meader formed a new partnership, and went on with the business as equal partners. Evidently Mrs. Clark did not enter into these arrangements any more than did Mrs. Meader.

Counsel says that this letter must be taken as an entirety; that its statements cannot be divided; and that, if it proves that the sales of 1893 were merely donations, it also proves that plaintiff received "a more valuable share than the rest of my children." The distinguished counsel can hardly be serious in that contention. While it is true that admissions and confessions can only go in as a whole, it is also true that, after they are in, any part of them may be discarded, if found to be inconsistent with the proven facts. The notarial agreements of partnership between Hedden, Clark, and Meader, and afterwards between Clark and Meader, show beyond cavil that Mrs. Hedden was mistaken with regard to this good will. We cannot, therefore, take her statement on that subject for true. But the other statement is a statement made by an intelligent person possessed of full knowledge of the facts, and it was not made lightly or gratuitously, but solemnly, and because the circumstances imposed upon the mother the duty of an ex-

planation to the other daughter. It was in the nature of a confession somewhat painful to make. Under these circumstances to ask us to discard the statement because Mrs. Hedden in the other statement was in error, is, we say, to urge a request in which counsel can hardly be serious. The error of the one statement could impeach the reliability of the other statement only in so far as it might detract from the competency of Mrs. Hedden to make a correct statement; and defendants are very far from impeaching the strength and lucidity of mind of their mother.

The distinguished counsel says also that the declarations of Mrs. Hedden in this letter to the effect that the sales in question were mere distributions of her property among her children, cannot outweigh her declarations in the acts of sale, to the effect that the contracts were real sales; and counsel cites in support of this contention the case of Succession of Forsyth, 21 La. Ann. 367, where this court said:

"The declaration of the testator in his last will and testament are presumed to have been made with deliberation and reflection, and are entitled to due consideration, but they cannot be presumed to outweigh his express acknowledgment in an authentic act."

The distinction between that case and this case lies in the difference between self-serving declarations and declarations against interest. There the attack was by a forced heir in reduction of donations made in the will, and declarations of the will were invoked to show that a sale made by authentic act in the past was a mere donation. Here the attack is on the sale, and the declaration of the letter is invoked to show that the sale was a mere donation. The two cases are just the opposites of each other. In the one case the declaration bolsters up the arrangements of the deceased; in the other case it overthrows them. In cases like the one at bar the proceeding is, as it were, hostile to the deceased; so that the declarations of the deceased, if favorable to the plaintiff, have, to a certain extent, the force of admissions; whereas in cases like the one cited, where the declarations are made in furtherance of the designs of the deceased, such declarations can have no weight whatever,

except such as they derive from the solemnity of the circumstances under which they are made, as was well said by the court in the cited case.

Under the circumstances heretofore detailed, there is unquestionably made out for the plaintiff a strong case, one which places the defendants under the necessity of producing convincing proof in rebuttal. What do they produce? Nothing, except the impugned acts themselves, and one single witness. They claim that the consideration of the sales was a debt due them by their mother as heirs of their father, and they undertake to prove the debt by one single witness. They also set up as a consideration the alimony paid to their mother after she had devested herself of her last scrap of property in their favor, and the expenses of her funeral.

To this testimony as to the debt due defendants as heirs of their father plaintiff objected on the ground that it contradicted the act of settlement of 1886. The testimony, it is claimed, is admissible as explanatory of the true consideration of the act under article 1900 of the Civil Code, which provides that:

"If the cause expressed in the consideration should be one that does not exist, yet the contract cannot be invalidated if the party can show the existence of a true and valid consideration."

This article has heretofore been given a scope so broad that the limitation of its operation has become a matter of some difficulty; but we do not think it can be extended to letting in this testimony, except for the limited purpose hereinafter stated. The act of settlement was a transfer by the heirs to their mother of all their rights in the succession of their father. It was either a sale or a dation en paiement. The $56,600 was either an existing debt forming the consideration of a dation en paiement, or a price forming the consideration of a sale. Now, it is perfectly clear that where, by authentic act, a giving in payment or a sale has been made, the giver or the seller cannot afterwards deny that he owed the debt, or that he received the price, unless he opens the door by allegations of error or fraud. Therefore, as against their mother, these defendants could not have been permitted for

a single instant to pretend that they did not, in case the transaction was a dation en paiement, owe this debt, or, in case the transaction was a sale, receive the price. Forest v. Shores, 11 La. 416; Succession of Thomas, 12 Rob. 215. The article of the Code in question does not abrogate the rule by which parol evidence is inadmissible to contradict or vary written acts. This would appear very easily and plainly if the present suit were against the mother to compel her to give up the property or to pay the price named in the act. No one but would say at once that the act made full and irrefragable proof of the sale of the property if the suit was for the return of the property, and of the payment of the price if the suit was for the payment of the price.

What the defendants plainly could not have done thus by a direct suit against the mother they are attempting to do indirectly in this case by urging identically the same demand against her estate. They are alleging that the mother did not pay them as stated in the act of settlement; that she still owed them the debt. They are not alleging this in order to take the estate, but they are alleging it in order to retain the estate. The difference is one not of essence, but merely of accident. It is one which would not exist at all if the mother had not made the obnoxious sales or donations. These sales or donations neither added to nor detracted from the probative efficiency of the notarial act evidencing the settlement. The plaintiff is claiming as an heir of her mother. Therefore, in resisting the attempt to contradict this act of settlement between the mother and the defendants, she stands in the shoes of her mother.

This act of 1886 proves conclusively, as against the defendants, that the mother settled with them in full as heirs of their father, and that thereafter she owed them nothing. And, since this pretended debt is the only consideration urged for these sales in so far as D. C. Hedden, Mrs. Anderson, and H. H. Hedden are concerned, the conclusion is that, as to them, the sales were without consideration.

In so far as Helen Grace Hedden is concerned, however, the contention is that the payment of the $11,600 under the act of settlement was made to her by the mother by

means of a note, and that the consideration of the sales to her was this note. The testimony was properly admitted by the learned judge a quo for the purpose of showing the giving of this note. Such testimony does not contradict the fact of the payment having been made, but merely explains how it was made. Chew v. Chinn, 7 Mart. (N. S.) 535; Berard v. Boagni, 30 La. Ann. 1125. The testimony merely goes to show a consideration for the note.

Was this payment made by means of a note? If such had been the case, we do not see why the act should not have said so. The contract would not have been less simple or less valid, and very few more words would have been required for its expression. However, let us see what proof there is of this note having been given.

As stated above, there is but one witness, D. C. Hedden. His testimony is: That at the time of the act of settlement of 1886 the heirs had received from their mother in money and property as follows: Mrs. Clark, $11,600; D. C. Hedden, $11,500; Mrs. Anderson, $6,600; H. H. Hedden, $1,500; and Helen Grace Hedden nothing. That thereafter Mrs. Hedden gave Helen Grace Hedden nothing. That several years after the settlement Helen Grace Hedden produced a note, and asked him to calculate the interest on it, and that the amount in principal and interest was $14,000 and something. That he does not remember the amount of the principal of the note, nor the date, but that the note was made payable in one year. That Helen Grace insisted upon payment of the note, fixed the time within which she would employ a lawyer if it was not paid, and that the mother, not having any money, made the sale of 1890 of the Canal street property in part payment of the note, and executed a new note for the difference. The witness produces a note, with signature torn off, and not shown to be in the handwriting of Mrs. Hedden, for $7,355.80, and says that this was the new note in question; and that this note was taken up by the mother when she made the sale of 1893.

It is undeniable that this witness' testimony has about it a ring of honesty, but the judicial ear cannot be certain whether the resonance proceeds from a solid knowledge of the facts or from impulsive zeal.

The witness positively declines to admit on cross-examination that it was possible for his mother to have given money to his sister without his knowing it, and only by the hardest can he be got to admit, and then but grudgingly, that the thing was physically possible, although he oftentimes was in New Orleans while his mother and sister were in Chattanooga. One would say from the manner of the admission that he was not so sure about even this physical possibility. He is thus cocksure because of his perfect familiarity with the affairs of his mother as her agent, and because of his constant intercourse with his mother and sister; and yet he knew nothing of the alleged note for $11,600 until years after it had been given, and he does not remember the date nor the amount of it; and he did not see the mutilated note until after the act of sale of 1893 had been passed; and we find that the dates of the mutilated note and of the act of sale of 1890 do not agree by 18 months; and we find that, supposing the original note to have been given in 1886, and for $11,600, its amount in principal and interest at the date of the execution of the mutilated note would have been $14,385, and the mutilated note would have had to be given for $4,355, and not for the $7,355.80 it carries on its face, —a discrepancy between the statement of the witness and this mutilated note of $3,000. And we find that the statement of the mother's having made the sale of 1890 because she was being pressed for payment, and had no money, is inconsistent with the perfect relations existing between mother and daughter, and is further somewhat inconsistent with the fact that in the year 1889 the mother received $24,460, and in the year 1900 $9,000 in cash and notes, from sales of property, these sums being thus received over and above her regular income.

It may be that every word Mr. Hedden has spoken is true, but his unsupported testimony is not sufficient to prove this note theory, and without such proof the sales to Helen Grace Hedden remain without consideration, as much so as those to the other defendants. Helen Grace Hedden should have testified, and her absence in New York was not a good excuse for not doing so. The policy of our law is against permitting judgments for more than $500 to rest on the

testimony of a single witness. The mutilated note does not corroborate the witness, since its execution is not proved otherwise than by the witness himself, and a witness cannot corroborate himself. Of course, the impugned acts afford corroboration; but in actions en declaration de simulation and in revocatory actions (and the present action partakes of that nature), after a prima facie case has been made out, to argue from the impugned acts is almost like begging the question. Before the leveled lance of these actions the formidable potency of authentic acts for proof melts away like the strength of a giant under the wand of an enchanter. After a prima facie case has been made out in these actions, the impugned authentic act must lean for support on the witnesses, not the witnesses on it. King v. Atkins, 33 La. Ann. 1065.

The specific prayer of plaintiff is that defendants be held bound to collate her one-fifth share and portion of the real estate in question; that said properties be collated in kind to the succession of the mother; that plaintiff be recognized as owner of and be put in possession of one-fifth undivided of said properties; and that a partition of said properties be ordered, and the defendants be made to account for the revenues of said properties from the date of said donations.

The lower court gave judgment accordingly, except that it decreed the accounting of the revenues only from judicial demand, and allowed the expenses of the funeral to be deducted therefrom.

In this court plaintiff filed an answer, praying that the judgment be amended so as to make the debt for the revenues run from the date of the disguised donations.

Article 1515, Civ. Code, provides as follows:

"The donee restores the fruits of what exceeds the disposable portion only from the day of the donor's decease, if the demand of the reduction was made within the year; otherwise, from the day of the demand."

Plaintiff contends that this article applies only in cases when the rights of the forced heir are fixed by law, and are subject to no extraneous questions, and does not and cannot apply to donations disguised in the form of sales, where the pretended vendee maintains the validity of the sales, and claims

to hold by a title adverse to the succession, and where the forced heir is compelled to resort to an action en declaration de simulation of the sale as such, as a condition precedent to his claiming any interest in the property. In such a case, says plaintiff, the party asserts possession not as donee, but as vendee, and claims by a title adverse to the ancestor's succession; and after his claims are overruled he cannot make such wrongful possession the basis of an appropriation of the fruits of the claimant's property, title to which was dependent upon success in proving the simulation of defendant's title as vendee; that, until the question of simulation vel non of these acts as sales is determined, the claimant cannot know whether he is entitled either to reduction or collation, and is not bound to make demand therefor.

We do not agree with this view. There is in this case no question of fraud or bad faith. The beneficiary under the donation in disguise has just as good reason to believe that he is the owner of the property as the beneficiary under a donation without disguise can possibly have. The disguise could have affected the question only if it had had the effect of keeping plaintiff in ignorance of her right to bring suit for collation, and there is no pretense of its having had that effect. Plaintiff's contention, on the contrary, is that she has known all along that her mother had made these sales as donations in disguise, and not as real sales. The disguise, therefore, has not been the cause of her delay. That cause, we may say in passing, was most praiseworthily founded in sisterly motives.

For the decision of the lower court decreeing the collation there is found an exact precedent in the case of Dupuy's Heirs v. Dupont, 11 La. Ann. 226, where this court said:

"The rule that simulated contracts of a father, when attacked by his forced heirs, are only to be set aside in so far as they impair the legitime of the heirs, does not seem to apply to the case of a simulated sale of land or slaves to a favorite child. Civ. Code, arts. 1305–1310, 1326, 1488, 2419.

"The district judge decreed that the sale should be set aside, and the property declared to belong to the succession of Antoine Dupuy.

It would have been more formal to have declared the sale a disguised donation to the daughter, and decreed that she should collate the property in a partition to be made hereafter among the heirs of Dupuy. The advantage which a father bestows upon a son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, where a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, or has spent money to improve his son's estate, all that is subject to collation. Civ. Code, art. 1326."

See, also, Montgomery v. Chaney, 13 La. Ann. 207, where the court said:

"Equality between heirs of the same degree is the cardinal principle of the Louisiana law of inheritance. No deviation is allowed from this rule save within a narrow limit, and by pursuing the forms prescribed by law. If a father desires to prefer one child to another in the distribution of his property, he is bound to state his design expressly by declaring that the gift or legacy is intended as 'an advantage or extra portion,' or 'using other equivalent terms.' Civ. Code, art. 1311. 'The sales of immovable property or slaves, made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovables or slaves sold at the time of the sale.' Civ. Code, art. 2419. The foregoing article is a legislative recognition of the right to institute such actions as the present. And even where there is a price actually paid exceeding one-fourth of the value of the property sold, but much below its fair value, and an advantage is thus indirectly sought to be given to one heir over others, the law searches it out, and compels the heirs to stand upon an equal footing. 'The advantage which a father bestows on his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, when a father has sold a thing to his son for a very low price, or has paid for him the price of some purchase, or spent money to improve his son's estate, all that is subject to collation.' Civ. Code, art. 1326.

"The present action was, therefore, well brought, and the fact, if fact it be, that the property conveyed to the defendant by his mother did not exceed the disposable portion, forms no bar to the plaintiff's demand, unless it appears that she conveyed it to him avowedly as an advantage or extra portion, the declaration of which intention should appear in the instrument itself purporting to convey the property, or in a subsequent act before a notary and two witnesses. Civ. Code, arts. 1310, 1311.

\*    \*    \*    \*    \*    \*    \*

"The true questions are, was the sale in question a real sale, and was a fair price at the time actually paid?

"If these questions, or either of them, are answered in the negative, collation is due by the pretended vendee, or the property comes into the mass, to be distributed according to the rules laid down in the Code upon the subject of partition, unless it be found that the deceased declared the same to be intended as an advantage in the manner already indicated."

The right of action of the excluded heir is not, therefore, restricted to the legitime, but extends to an equal share of the property.

There is no merit in the contention that the defendants have the right to collate by taking less. They could take less only if there was something of which less could be taken; but there is not. These immovables constitute the entire succession (Atkinson v. Rogers, 14 La. Ann. 633; In re Lewis' Estate, 32 La. Ann. 385; Cox v. Von Ahlefeldt, 50 La. Ann. 1266, 23 South. 959); that is, the personal property and the immovables outside of the state, if any such there be, are beyond the pale of the cognizance of the court. For all practical purposes they do not exist, and the situation is that the defendants are in possession of the entire succession, one-fifth of which plaintiff is entitled to, and owner of one-fifth of which she is now accordingly decreed to be.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.

A rehearing was granted in this case. Subsequently the suit was compromised, and the appeal was discontinued by consent.